378 F.2d 78
 Hewlett AKERS, Plaintiff-Appellee,
v.
NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant.
NORFOLK AND WESTERN RAILWAY COMPANY, Petitioner,
v.
The Honorable Ted DALTON, United States District Court Judge
for the Western District of Virginia, Respondent,
Hewlett Akers, Intervenor.
 Misc. Nos. 382, 11153.
 United States Court of Appeals Fourth Circuit.
 Argued March 10, 1967.
Decided May 5, 1967.
 
 Robert J. Rogers, Roanoke, Va., for Norfolk and Western Ry. Co.
 Jack Coulter, Roanoke, Va., for Hewlett Akers.
 Before HAYNSWORTH, Chief Judge, and BOREMAN and BRYAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Transfer under 28 U.S.C. 1404(a) of Hewlett Akers' Federal Employers Liability action, 45 U.S.C. 51 et seq., against Norfolk & Western Railway Company from the United States District Court for the Western District of Virginia at Roanoke, to the Southern District of West Virginia at Huntington, was refused the railway, and it now asks us to direct the removal.
 
 
 2
 The controversy comes here on the company's application for permission to appeal under 28 U.S.C. 1292(b) from the interlocutory order denying the transfer, and also on its petition for mandamus requiring the District Judge to order the change of courts. Exercising our statutory discretion, we decline the appeal. However, we think the transfer advisable and should be effectuated.
 
 
 3
 The suit of Akers, filed on March 21, 1966, alleged that the defendant was an interstate common carrier by railroad, with its general offices in the City of Roanoke, Virginia; that on January 17, 1966, while in the employ of the railway in the repair of its tracks near Cyrus, West Virginia, Akers was injured through the negligence of his employer in failing to provide him and the others on the job with adequate help and equipment to lift and move heavy rail sections; and that as a result thereof he experienced severe suffering, loss of wages and impairment of his work and earning ability, for which he sought damages.
 
 
 4
 Cyrus is not far from Huntington, where sits the United States District Court for the Southern District of West Virginia. The plaintiff as well as all of the persons who witnessed the events of the plaintiff's injury reside within the Cyrus area. Following the accident, Akers was treated by a neurosurgeon having his office in Huntington. He was hospitalized and underwent surgery there.
 
 
 5
 None of the witnesses to the accident or the extent of plaintiff's injury is within reach of the subpoena of the Federal District Court at Roanoke. The only relation of that city to the case is that it is the headquarters of the railway and the place where its employee records are kept. The suit was filed there, we are told, because the court docket in the Western District of Virginia was more current than the West Virginia docket. However, it now appears that a case of this kind would be given a trial at Huntington within a year of filing.
 
 
 6
 Transfer of cases is regulated by 28 U.S.C. 1404(a), which reads:
 
 
 7
 '(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'
 
 
 8
 This statute is more lenient in authorizing transfers than is the common law doctrine of forum non conveniens. Norwood v. Kirkpatrick, 349 U.S. 29, 31, 75 S.Ct. 544, 99 L.Ed. 789 (1955).
 
 
 9
 Looking at the determinative factors recited in the statute, obviously the action ought to be tried in Huntington. The circumstances just enumerated are indisputable; they uncompromisingly point to transfer. Otherwise, the railroad could be left with no alternative but to adduce its evidence through depositions, a mode of proof universally acknowledged to be inferior to the personal appearance of witnesses in court. We note that in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), which presaged adoption of 1404(a), the Court approved dismissal on the ground of forum non conveniens of an action instituted in the City of New York to recover damages for the destruction of the plaintiff's warehouse in Virginia. The expediency of a local trial was deemed to outweigh the plaintiff's choice of forum.
 
 
 10
 $3, 4$ Of course, we recognize the primary right of the plaintiff to choose his forum, a selection not easily to be overthrown. Moreover, we recognize, too, that the decision rests in the discretion of the District Judge. Nevertheless, we must be equally sensible to an abuse of that discretion when measured upon the considerations of 28 U.S.C. 1404(a), supra. In Morehead v. Barksdale, 263 F.2d 117 (4 Cir. 1959), we upheld refusal to order a transfer, finding no abuse of discretion. In like vein we ordered a transfer in Southern Railway Company v. Madden, 235 F.2d 198 (4 Cir. 1956), cert. den. 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed.2d 244, despite denial in the trial court, where the case 'clearly' called for an exercise of the power. True, in Clayton v. Warlick, 232 F.2d 699, 706 (4 Cir. 1956), we declined to countermand by mandamus or prohibition an order of transfer. However, there the Court saw no abuse of discretion in the transfer and consequently there was no occasion to issue the writ, the question of power thus rendered moot. Cf. Paesch v. Winter, 366 F.2d 756 (4 Cir. 1966). In General Tire & Rubber Co. v. Watkins, 373 F.2d 361 (4 Cir., en banc, January 11, 1967), we utilized the writ to effect a transfer.
 
 
 11
 In view of this history of our supervision of rulings on transfer, we have no hesitancy in holding that in the circumstances here denial of transfer constitutes abuse of discretion, and we may issue mandamus, under the authority of the all writs statute, 28 U.S.C. 1651, to require the transfer of the case to West Virginia. Chicago, R.I. & Pac. R.R. v. Igoe, 220 F.2d 299 (7 Cir. 1955), cert. den. 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735, see, also, Annotation, 93 A.L.R.2d 802, 815, 855-59 (1964). We note, too, the recent case of A. Olinick & Sons v. Dempster Bros., Inc., 365 F.2d 439, 443 (2 Cir. 1966), where it was said:
 
 
 12
 'the great majority of recent appellate decisions * * * indicate that the Courts of Appeals consider themselves possessed of the power to issue mandamus in extraordinary circumstances to correct the disposition of a transfer motion by the District Court, even where the District Court has purported to consider proper factors. * * *.'
 
 
 13
 It will be unnecessary, we are sure, to do more than advise the District Court of our ruling to accomplish the instant transfer.
 
 
 14
 Petition for mandamus granted.
 
 
 15
 BOREMAN, Circuit Judge, concurring in part and dissenting in part:
 
 
 16
 I concur in that portion of the majority opinion with respect to the disposition of Misc. No. 382 declining the appeal under 28 U.S.C. 1292(b) from the interlocutory order denying transfer of the case from the Western District of Virginia to the Southern District of West Virginia. Not without some feeling of hesitation because of the unsatisfactory form of the order denying transfer I indicate my disagreement with the decision of my brothers to command such transfer.
 
 
 17
 It is indeed regrettable that the district judge disposed of the motion to transfer without even a word of explanation as to the considerations involved in exercising his discretion with respect to such disposition. At the same time, counsel for the prevailing party below, who now urges upon us the correctness of the order, appears to have made no effort to impress upon the judge the importance of assigning reasons underlying his decision. To merely say that the content of the brief order is unsatisfactory for our purposes would be a gross understatement of my reaction. having thus indicated my dissatisfaction and with no disposition to conceal a feeling of irritation I turn to the questions at hand.
 
 
 18
 Mandamus against judges, as well as the other extraordinary writs of prohibition and injunction, are drastic remedies. They should be reserved for the really extraordinary causes.[1] As stated in Great Northern Railway Company v. Hyde, 238 F.2d 852, 857 (8 Cir. 1956):
 
 
 19
 'We do not regard controversies between litigants, and between their counsel, as to where a case can most conveniently, fairly, efficiently and economically be tried as 'really extraordinary."
 
 
 20
 The motion to transfer an action under section 1404 is addressed to the sound discretion of the district court.[2] While, as pointed out in the majority opinion, section 1404(a) is more lenient in authorizing transfers than is the common-law doctrine of forum non conveniens, the district judge, in exercising discretion, is limited in his consideration to factors specifically mentioned in said section,[3] including 'in the interest of justice.' It is my firm conclusion that mandamus should lie only to redress a clear-cut abuse of discretion.
 
 
 21
 On August 4, 1966, during the course of the proceedings had with respect to the motion to transfer, local counsel for plaintiff addressed a letter to the district judge asking that the plaintiff be given an opportunity to take a nonsuit without prejudice before any orders were entered if the court should be disposed to grant the railroad's motion to transfer. A letter dated August 5, 1966, from the judge to counsel indicated that it was his inclination to transfer the case but that first an opportunity for oral argument would be provided. Subsequently, on August 26, 1966, a hearing was held at which time the matter was argued, but it was not until January 11, 1967, that the judge entered the order denying the railroad's motion to transfer. It can be assumed that all of the arguments advanced here were presented to the district judge and it is quite obvious that the arguments presented and the reasons advanced by the plaintiff, although not revealed by the court, were more persuasive and merited more consideration than those of the defendant railroad when the judge abandoned his earlier inclination to transfer and exercised his discretion in retaining the case in the Western District of Virginia for trial and disposition.
 
 
 22
 The FELA provides that an action may be brought in the United States District Court in the district of the defendant's residence and that is precisely what was done here. The plaintiff, in exercising his choice of forum, was pursuing a substantial right which the law clearly gives him, a right not to be denied unless pertinent facts, circumstances and considerations compel denial. 'Interest of justice' contemplates and embraces more than mere convenience of the parties and witnesses.
 
 
 23
 The district judge was fully aware of the condition of the dockets under his control and of the time within which the case could be tried in his district. He was confronted with conflicting reports with respect to the docket conditions in the district to which transfer was requested. The estimates as to the time when the case might be tried in the Southern District of West Virginia varied from a minimum of one year to a maximum of three years. The judge's attention was directed also to the fact that Huntington, in the district to which transfer was sought, is notorious for low jury verdicts, a matter of serious concern to the plaintiff. The defendant has substantial ties with the City of Roanoke. True, certain prospective witnesses are in the Huntington area, most of them employees of the defendant. But, according to plaintiff, other essential witnesses at trial will be called to establish various railroad operating procedures and relevant information as to the plaintiff's loss of earnings, both present and future. These witnesses would come from the defendant's general offices at Roanoke. Defendant seems to be fearful that some of the employee eyewitnesses to the accident would fail to appear to testify if a trial were held in Roanoke. However, these witnesses would not be required to incur any personal expense in coming to Roanoke and, if it became necessary to take their depositions, the disadvantage to the plaintiff would probably be greater than would be any disadvantage to the defendant. If these railroad employees were needed as witnesses for the defendant, transportation would pose no real problem since the defendant is a common carrier. Medical witnesses would be necessary in presenting the plaintiff's case. But if the plaintiff is willing to bear the expense of the travel and attendance of his witnesses what reasonable objection could defendant have?
 
 
 24
 A transfer, it is argued, would probably mean that both parties would incur some additional expense. As to the defendant, new counsel would probably have to be employed, additional files set up and duplicated, and other expense incident to preparation and trial in a distant district incurred. As to the plaintiff, a transfer would work a hardship on him. He has already employed his chief counsel and local counsel in Roanoke. He would face the problem of retaining new trial counsel in Huntington and noncontingency arrangements would have to be made with present local counsel. There is a possibility that the plaintiff's share in any ultimate recovery might be decreased because of the forced necessity of increasing any contingent fee arrangement in order to employ a third law firm.
 
 
 25
 The time that would elapse before trial in Huntington, if considerably greater than in Roanoke, might conceivably work to the advantage of the movant railroad if economic necessity should force the plaintiff to come to terms with the railroad in settlement of his claim for damages-- a practical factor which is not to be lightly regarded. The plaintiff chose the Western District of Virginia, as he had the clear right to do, because of its earned reputation for dispensing speedy justice. The court below may have concluded that the plaintiff could ill afford to wait for the redress of the wrong allegedly done him, a waiting period which might be measured in years.
 
 
 26
 Based upon the matters to be considered and weighed by the district judge, the over-all equities when the full picture is examined and the relatively inconsequential difference in convenience or expense to the defendant, I am not convinced that the district court clearly abused its discretion by permitting the plaintiff to obtain a speedy trial which he would more likely get in Roanoke, but I am still disturbed because we are left to speculate as to what circumstances, considerations, and criteria impelled the district judge to deny transfer.
 
 
 27
 The Majority opinion points to our decision in General Tire & Rubber Company v. Watkins, 4 Cir., 373 F.2d 361, where we ordered a transfer from the District of Maryland to the Northern District of Ohio, Eastern Division. Our action was there taken after the district judge had more than once refused transfer and retained jurisdiction of the case. We recognized the right of the plaintiffs to choose their forum despite the fact that there was every indication that the convenience of the parties and witnesses would be serbed by such a transfer; furthermore, there was litigation pending in the Northern District of Ohio involving the same subject matter, viz., patent validity and infringement. After upholding the district judge in the exercise of his discretion on previous occasions, we finally took the action we did because of other most unusual and 'really extraordinary' circumstances which were brought to light and which persuaded us that the district court had abused its discretion in refusing transfer. Our action in that protracted litigation served to demonstrate our recognition of the basic principle that the exercise by the district court of its discretion with respect to transfer was not to be disturbed in the absence of extraordinarily compelling circumstances.
 
 
 28
 In the instant case I would either affirm the denial of the motion to transfer or require a disclosure by the district court of its reasons for such denial.
 
 
 
 [1]
 Lykes Bros. Steamship Co. v. Sugarman, 272 F.2d 679 (2 Cir. 1959)
 
 
 [2]
 See Philip Carey Manufacturing Company v. Taylor, 286 F.2d 782 (6 Cir.), cert. denied 366 U.S. 948, 81 S.Ct. 1903, 6 L.Ed.2d 1242 (1961)
 
 
 [3]
 Chicago, R.I. & P.R. Co v. Igoe, 220 F.2d 299 (7 Cir.), cert. denied 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955)