575 A.2d 1235

**ODENTON DEVELOPMENT COMPANY et al.**

v.

**Bernice E. LAMY.**

**No. 68, Sept. Term, 1989.**

Court of Appeals of Maryland.

July 2, 1990.

34

Lynne B. Malone (Anderson, Coe & King, both on brief), Baltimore, Christopher P. Downs (James R. Chason, Whiteford, Taylor, & Preston, all on brief), Towson, for petitioners, cross-respondents.

Richard B. Bardos (Phillips P. O'Shaughnessy, Sandbower, Gabler & O'Shaughnessy, P.A., Baltimore, Joseph A. Miklasz of Glen Burnie, on brief), for respondent, cross-petitioner.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and CHASANOW, JJ.

CHASANOW, Judge.

In February of 1986, Bernice E. Lamy (Lamy) went grocery shopping with her sister and a friend. They went

to the A & P[1] grocery store in the Odenton Shopping Center in Anne Arundel County, Maryland. There had been a snowstorm two days earlier, and as they drove into the shopping center parking lot, Lamy observed that various sections of the parking area in front of the A & P had not been completely cleared of accumulated snow, ice, and slush.

After parking the car, Lamy and her companions noticed a foot or more of packed snow abutting the curb in front of their car. They chose to enter the A & P by walking across the parking lot, encountering some snow, ice, and slush on the way. They remained in the store for about 45 to 60 minutes. Exiting the store, Lamy elected not to cross the parking lot as she had when entering. Instead, she pushed her grocery cart down a sidewalk bordering the A & P, and up a covered walkway which extended from the A & P to the rest of the shopping center.

The walkway was clear of ice and snow, but as she approached her friend's parked car, she encountered the snow packed against the curb between the covered walkway and her friend's car. Lamy then took two grocery bags and stepped over the packed snow. Stepping on what she thought was a clear spot, she proceeded to hand her two grocery bags to her sister. She testified that at this point, she slipped a little. Despite having slipped, Lamy then returned to her grocery cart, once again stepping over the snow and ice packed against the curb. On this next effort, she took three grocery bags, two in one hand, and one in the other. Again she attempted to step over the accumulation of packed snow and ice. On this second attempt, she slipped and fell.

Lamy filed suit in the Circuit Court for Baltimore City, the forum she preferred, against A & P, lessee of the store, and Odenton Development Company (Odenton), owner and operator of the shopping center and lessor of the store A &

---

1. "A & P" is the Great Atlantic & Pacific Tea Company, and in Maryland, is now known as Super Fresh.

P occupied. Lamy was able to effectuate service of process on A & P. Odenton, however, was a different matter.

According to counsel for Lamy, Odenton was listed with the Maryland Department of Assessments and Taxation as a corporation, and had a resident agent in Baltimore City. Lamy tried to serve her complaint on the resident agent for the "Odenton Development Corporation." Twice, she was unable to do so.

Although Odenton was named in the complaint filed in the Circuit Court for Baltimore City, it had not yet been served when A & P moved to have the case dismissed for improper venue [2] pursuant to Maryland Rule 2–322, and Maryland Code (1974, 1989 Repl.Vol.) Courts and Judicial Proceedings Article, § 6–201(b), which states:

> (b) *Multiple Defendants.*—If there is more than one defendant, and there is no single venue applicable to all defendants, under subsection (a), all may be sued in a county in which any one of them could be sued, or in the county where the cause of action arose.

A & P claimed, without any supporting affidavits, that under Courts Article § 6–201(b), the single venue applicable to both the A & P, who does business throughout the state, and Odenton, who maintains its principal business offices and regularly conducts its business in Anne Arundel County, was Anne Arundel County.

Lamy filed an answer to this motion contending that venue was proper in Baltimore City because both Odenton and A & P could be sued in Baltimore City. A & P filed a reply requesting transfer of venue from Baltimore City to Anne Arundel County for the convenience of the parties and witnesses pursuant to Maryland Rule 2–327(c), which states:

---

**2.** When attempting to have a case dismissed for improper venue, the moving party must raise the issue in a motion filed before the answer, if an answer is required. Maryland Rule 2–322(a). The motion must state with particularity the grounds and the authorities in support of dismissal. Md.Rule 2–311(c).

**(c) Convenience of the Parties and Witnesses.**—On motion of any party, the court may transfer any action to any other circuit court where the action might have been brought if the transfer is for the convenience of the parties and witnesses and serves the interests of justice.

In that pleading, A & P requested a hearing and alleged that its reasons for seeking a transfer were that plaintiff was a resident of Anne Arundel County; Odenton maintained its principal offices in Anne Arundel County; the cause of action arose in Anne Arundel County; and that "all witnesses in this matter would be from Anne Arundel County." Lamy responded to this pleading stating that "the Plaintiff contends that it is premature to state with any definitiveness the location of *all* witnesses involved." (Emphasis in original.) In her response, Lamy also alleged that Odenton "may never become a party in this law suit." The Circuit Court for Baltimore City granted A & P's motion to transfer the action to the Circuit Court for Anne Arundel County.

After the action was transferred, Lamy effectuated service on Odenton, which ultimately was discovered to be a partnership. A trial was held in the Circuit Court for Anne Arundel County, and the jury returned a verdict in favor of both defendants. Lamy moved for a Judgment Not Withstanding the Verdict and/or For a New Trial. The court denied both motions and Lamy appealed to the Court of Special Appeals.

In an unreported per curiam opinion, the Court of Special Appeals held that A & P had not met its burden of demonstrating that venue was improperly laid in Baltimore City, and that the Circuit Court for Baltimore City had abused its discretion in transferring the action to Anne Arundel County for the convenience of the parties and witnesses. Both A & P and Odenton petitioned this Court, claiming that the Court of Special Appeals incorrectly interpreted the various venue provisions.

Lamy cross-petitioned this Court conditionally. She maintains that the Court of Special Appeals was correct in its holding, but also argues that when instructing the jury, the trial court failed to properly define a "voluntary assumption" restriction on the defense of assumption of the risk. We granted certiorari on all three petitions.

■ We begin with the intermediate appellate court's interpretation of the various venue provisions. The Court of Special Appeals noted that A & P had not met its burden of demonstrating that venue had been improperly laid in Baltimore City. Under Maryland law, improper venue is a defense with the duty of averment and the burden of proof falling on the defendant. *Gambrill v. Schooley*, 95 Md. 260, 271, 52 A. 500, 501 (1902).

■ A & P's motion to dismiss for improper venue was no more than a bare allegation that venue was improper, unsupported by affidavit or evidence. The Court of Special Appeals correctly held that A & P had failed to sustain its burden of proving that venue was improper in Baltimore City. Venue would, therefore, have been proper in Baltimore City as well as in Anne Arundel County.[3] This left as the only basis for the transfer, the convenience of the parties and witnesses.

The Court of Special Appeals, however, then erroneously concluded that the Circuit Court for Baltimore City had abused its discretion when it transferred the case to Anne Arundel County for the convenience of the parties and witnesses. Recognizing that a hearing on a motion to transfer venue is not mandated by the rules, the intermediate appellate court nevertheless concluded that "in light of the bare allegations in the pleadings," failure to hold a hearing was an abuse of discretion. We do not find that

---

3. A corporation may be sued where it carries on a regular business or maintains its principal offices in the state. *See* Maryland Code (1989 Repl.Vol.), Courts and Judicial Proceedings Article, § 6–201(a).

the allegations in the pleadings are quite so bare or that a hearing was required.

Section (c) of Md.Rule 2–327 was derived from 28 U.S.C. § 1404(a). *See* Md.Rule 2–327. Consequently the federal law construing § 1404(a) is highly persuasive in our analysis of the trial court's ruling, which was based on Md.Rule 2–327(c).

When determining whether a transfer of the action for the convenience of the parties and witnesses is in the interest of justice, a court is vested with wide discretion. *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789, 793 (1955); *King v. Johnson Wax Associates, Inc.,* 565 F.Supp. 711, 719 (D.Md.1983). "Section 1404(a) is intended to place discretion in the District Court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' " *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22, 31 (1988) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945, 953 (1964)). It is the moving party who has the burden of proving that the interests of justice would be best served by transferring the action, *Texas Gulf Sulphur Company v. Ritter,* 371 F.2d 145, 147 (10th Cir.1967); *Equitable Bank v. Finn,* 671 F.Supp. 374, 380 (D.Md.1987); *King,* 565 F.Supp. at 719, and a motion to transfer should be granted only when the balance weighs strongly in favor of the moving party. *Akers v. Norfolk and Western Railway Company,* 378 F.2d 78, 80 (4th Cir.1967); *King* at 719. To reach this decision, a court "must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.' " *Stewart* 487 U.S. at 30, 108 S.Ct. at 2244, 101 L.Ed.2d at 32.

In support of its motion to transfer, A & P alleged that all witnesses would be from Anne Arundel County, but this allegation was not supported by affidavit as required by

Maryland Rule 2–311(d). In her response, however, plaintiff did not deny A & P's statement that all witnesses would come from Anne Arundel County. Instead, she contended that it was based on "supposition," and that it was "premature to state with any definitiveness the location of *all* witnesses involved." (Emphasis in original.) The trial judge could have inferred from the plaintiff's response, her reluctant acknowledgment that all of the witnesses known at that time were from Anne Arundel County.

 Balancing the convenience of the parties and witnesses in this suit, the trial court could properly find that the scales tip heavily in favor of the transfer. The cause of action arose in Anne Arundel County. The pleadings establish that Lamy, the plaintiff in the trial court, resides in Anne Arundel County. It is reasonable to assume that any witnesses to the fall were employed at the A & P, or were grocery shoppers at the A & P. It is also reasonable to assume that people are more likely to shop for groceries near their residences. The trial judge could properly conclude that all, or almost all, of the witnesses would be from Anne Arundel County. Indeed, this conclusion was ultimately proven to be correct since five of the six witnesses who testified at trial were from Anne Arundel County. And while it might have been a better practice to hold a hearing, the rules do not mandate a hearing on a motion to transfer. Maryland Rule 2–311(f). We therefore find that the transferring court did not abuse its discretion either in declining to hold a hearing or in transferring the case to the Circuit Court for Anne Arundel County for the convenience of the parties and witnesses.

 We also point out that Lamy has waived any right to assert improper venue. Odenton was never served in Baltimore City. In her opposition to the change of venue, Lamy noted that Odenton "may never become a party to this lawsuit," but added that if it did become a party, the change of venue from Baltimore City to Anne Arundel County might not have been what Odenton desired. When Odenton

was served, the case had already been transferred to Anne Arundel County. Lamy never raised any objection to Anne Arundel County venue in its suit against Odenton.

■ Lamy's remaining contention is that the trial court erroneously failed to instruct the jury on the "voluntary assumption" restriction of an assumption of the risk defense. Lamy requested the following instruction:

> Bernice Lamy shall not be considered to assume the risk of a known defective condition, the ice and snow covered step down from the curb to the parking lot, if you find that there were no alternative safe routes of exit because as a business invitee she has a right of egress.

The trial judge did not err in rejecting this proposed instruction.

Lamy relies heavily on the Court of Special Appeals' decision in *Rountree v. Lerner Dev. Co.*, 52 Md.App. 281, 447 A.2d 902 (1982), in which a woman exiting her apartment the morning after a snowstorm, slipped and fell on ice-covered steps. The steps were on the only available route of egress from her apartment. In *Rountree*, the Court of Special Appeals discussed a "voluntary assumption" restriction[4] on the assumption of the risk defense.

---

4. The Court of Special Appeals quoted Professor Prosser from his *Law of Torts*, (4th ed. 1971), at p. 450 to the effect that,

> [a] limitation upon the defense of assumption of risk is that the plaintiff is not barred from recovery unless his choice is a free and voluntary one. There must first of all, of course, be some manifestation of consent to relieve the defendant of the obligation of reasonable conduct. It is not every deliberate encountering of a known danger which is reasonably to be interpreted as evidence of such consent....;

and on p. 451,

> [e]ven where the plaintiff does not protest, the risk is not assumed where the conduct of the defendant has left him no reasonable alternative. Where the defendant puts him to a choice of evils, there is a species of duress which destroys all idea of freedom of election. Thus ... *a tenant does not assume the risk of the landlord's negligence in maintaining a common passageway when it is the only exit to the street.* In general, the plaintiff is not required to surrender a valuable legal right, such as the use of his own property as he sees fit, merely because the defendant's conduct has threat-

*Id.* at 286, 447 A.2d at 905. The intermediate appellate court held that the lack of a reasonable alternative route raises a jury question as to whether the plaintiff's choice to encounter the danger was voluntary. *Id.*

■ While we decline here to address a "voluntary assumption" restriction on the assumption of the risk defense, we think Lamy's reliance on *Rountree* is misplaced. When giving instructions to a jury, the trial judge must insure that the instructions fairly and accurately set forth the law applicable to the case, and that the instructions are supported by testimony or evidence presented during the case. *Johnson v. State,* 303 Md. 487, 512, 495 A.2d 1, 13, *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1985); *Sergeant Co. v. Pickett,* 285 Md. 186, 194, 401 A.2d 651, 655 (1979); *Levine v. Rendler,* 272 Md. 1, 13, 320 A.2d 258, 265 (1974). In the instant case, the trial judge's instructions adequately covered the issue. The trial judge instructed the jury as follows:

> The defense of assumption of the risk rests upon the Plaintiff's consent to relieve the Defendant of obligation of conduct toward the Plaintiff and to take his chances of harm from a particular risk ... such consent may be found by implication from the conduct of the party. When a Plaintiff enters voluntarily into a situation involving obvious danger, the Plaintiff may be taken to assume the risk and relieve the Defendant of responsibility. Such implied assumption of risk involves knowledge and appreciation of the risk and voluntary choice to encounter it.

We find no error in the trial court's instructions.

The record is clear that Lamy knew of the condition of the premises before she got out of her car, and that she safely entered the A & P one way and exited in a different way. Lamy also testified that:

---

ened him with harm if the right is exercised.... By placing him in the dilemma, the defendant has deprived him of his freedom of choice, and so cannot be heard to say that he has voluntarily assumed the risk. (Emphasis supplied.)

there looked to be a clear ... well, there looked to be a clear spot in front of me to the right. Well, I stood there and I said, well, am I going to overstep this snow, or am I going to turn around ... well, truthfully, I didn't ... well, I had to decide whether or not I was going to try to overstep the snow, turn around, go back across the traffic, back to the front of the store with the cart ... wait for Linda [her friend] to come and get me, or which she was already at the car and was already putting her things in, or try to overstep that mound of about a foot, foot and a half, onto the clear spot that I ... like I said, I saw what seemed to be a clear spot, there. And it didn't look like ... it didn't appear to be that big of a step from the curb to the clear spot, so I just ... I wasn't ... I guess I wasn't really, at the time ... I wasn't really concentrating on, thinking about ... well, anyway, let me not say that. Um ... I decided that it wasn't that big of a step that I'd have to take to overstep the mound onto the clearing, so I thought, well, it's not that big a step, I'll just overstep this....

We think it is clear from her own testimony that Lamy was aware of alternatives to stepping over the ice near the car encumbered with her multiple bags of groceries. Her testimony reveals that she debated whether to turn around, go back to the front of the store with the cart, and wait for her friend to bring the car around to be loaded with the groceries. Lamy made a voluntary choice to reach her car in the manner that she did. Thus, even if *Rountree* controlled, it is clear that there was a safe alternative means of egress from the store.

The Circuit Court for Baltimore City did not err in transferring the action from Baltimore City to Anne Arundel County for the convenience of the parties and witnesses. The Circuit Court for Anne Arundel County did not err when instructing the jury on the assumption of the risk defense. We must therefore reverse the judgment of the Court of Special Appeals.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT/CROSS–PETITIONER BERNICE E. LAMY.