919 A.2d 21

**MORGAN STATE UNIVERSITY**

v.

**Pamela R. WALKER.**

**No. 74 Sept. Term, 2006.**

Court of Appeals of Maryland.

March 15, 2007.

Sally L. Swann, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, MD, for Petitioner.

Gary A. Stein (Ain & Stein, LLC, on brief), Rockville, for Respondent.

Argued before BELL, C.J., RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE and ALAN M. WILNER (Retired, Specially Assigned), JJ.

GREENE, Judge.

This case arises from a slip and fall incident. Pamela Walker ("Respondent") went to visit her daughter at Morgan State University ("MSU") after a heavy snowstorm, and, after driving onto a snow and ice covered parking lot, walked across the ice, fell and fractured her leg. Respondent instituted a personal injury action against MSU, arguing that it was negligent in failing to remove the snow from the parking lot. The Circuit Court determined that despite MSU's negligence, as a matter of law, Respondent assumed the risk of her injuries and granted summary judgment in favor of MSU. The

Court of Special Appeals reversed, holding that the voluntariness of Respondent's actions was a jury question.

We conclude that, when Respondent walked across the parking lot with knowledge that the lot was covered with ice and snow, she assumed the risk of her injuries, as a matter of law, under the circumstances. The voluntariness of the plaintiff's conduct in an assumption of the risk analysis is measured by an objective standard. Because the uncontroverted evidence demonstrated that Respondent knowingly and voluntarily walked across the icy parking lot, the Circuit Court correctly granted summary judgment in favor of MSU.

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts of this case are not in dispute. It snowed approximately 22 inches in Baltimore, Maryland between February 16–18, 2003. MSU was closed through February 19, 2003 because of the snowfall. At that time, Respondent's daughter was a residential student at MSU. Carnegie Express, a company that MSU had hired to remove the snow, performed snow removal services on February 16 and 17. On February 18, MSU informed Carnegie Express that MSU would complete the snow removal process and that Carnegie Express did not have to do so.

At or around 8:00 a.m. on February 24, 2003, Respondent drove approximately one hour from her home in Upper Marlboro to visit her daughter at MSU. Respondent stated that she needed to bring her daughter money because her daughter did not have an ATM card and needed money for gas and other things. Respondent arrived at MSU's campus with the intention of parking in parking lot T, the lot in front of her daughter's dormitory. The parking lot is an elevated lot. Respondent explained that she, therefore, did not notice the ice and snow until she was already on top of it. She testified that once she pulled into the parking lot she noticed that she was driving "on crunchy ice and snow." Respondent found a parking spot near the entrance to the dormitory and parked without looking for a spot in another portion of the lot. She

explained that the only spots closer to the entrance were handicapped spaces. Respondent testified that she "didn't think of danger," she just thought "doggone, they didn't clean this parking lot." She also testified that she "had no other choice," aside from that parking lot, as to where to park her car.

Respondent parked and exited her car. She noticed snow and ice on the ground between her car and the entrance to the dormitory. She therefore held onto the cars next to her as she walked to reach her daughter's building. Respondent's daughter testified that, like the parking lot, the driveway and steps in front of her dormitory had not been cleared. Respondent testified that she held onto the railing when walking on the steps and walked very slowly. She also noted that she had on Timberland boots and stated "I mean I don't have any problems with walking or anything like that. Actually I'm a dare devil to be honest with you." She reached her daughter's dormitory without incident.

Respondent visited with her daughter for approximately one hour. On her way back to her car, she walked slowly and tapped each car, while looking down at the ground "to make sure that [she] didn't slip and fall." She saw snow and ice on the ground as she was walking and testified that she was "trying to be safe." When Respondent reached her vehicle, she lost her footing, fell to the ground and fractured her leg, an injury that she claims has cost her approximately $50,000 in medical bills and lost earnings.

Respondent instituted a personal injury action against MSU in the Circuit Court for Baltimore City, alleging negligent failure to clear the parking lot of snow and ice, and negligent hiring, training and supervision, on the basis that MSU's employees failed to clear adequately the snow and ice in the parking lot.[1] The Circuit Court granted summary judgment

---

1. Respondent also sued Carnegie Express. The Circuit Court granted Carnegie Express's motion for summary judgment. The intermediate appellate court affirmed that portion of the Circuit Court's judgment. The propriety of that ruling is not before us.

for MSU based on the theory that, as a matter of law, Respondent voluntarily assumed the risk of her injuries by walking on the snow and ice. Respondent appealed to the Court of Special Appeals. In an unreported opinion, the intermediate appellate court reversed the Circuit Court, holding that, under the circumstances, the jury should decide whether Respondent's decision to park in the lot and walk on the snow and ice was voluntary. MSU filed a petition for writ of certiorari in this Court, which we granted.[2] *Morgan State v. Walker,* 395 Md. 420, 910 A.2d 1061 (2006).

## DISCUSSION

MSU contends that the Circuit Court correctly applied an objective standard when it determined that Respondent acted voluntarily when she chose to park in parking lot T and enter her daughter's dormitory, despite the ice and snow on the ground. MSU states that "the evidence established unequivocally that [Respondent] was fully informed of the existence of ice and snow on the parking lot and fully understood the risk of slipping and falling and, therefore, voluntarily assumed the risk." MSU argues further that the intermediate appellate court erred in concluding that the issue of voluntariness was a jury question because that court "erroneously substituted a subjective test for the proper objective standard regarding the voluntariness of [Respondent]'s option to turn around and go home without visiting her daughter." MSU lastly avers that the Court of Special Appeals erred in considering MSU's negligence because any duty owed by MSU was superseded by Respondent's voluntary assumption of the risk.

---

2. MSU presented the following question in its petition for writ of certiorari:

> In rejecting the trial court's determination that, as a matter of law, the plaintiff's choice to park on the University's ice and snow covered parking lot was voluntary because she knew and understood the risk of walking on ice and snow and had the alternative of leaving the parking lot, returning home or looking elsewhere for suitable parking, did the Court of Special Appeals depart from the established standards of voluntariness as to the assumption of risk defense?

Respondent counters that the determination of her voluntariness "does not involve an exploration of her subjective state of mind but a weighing of objective, factual evidence to be presented at trial." She contends that this evidence includes whether: the parking lot was fully covered with snow eight days after the snow storm, the lot was open for students and their guests, MSU posted warnings, Respondent saw the dangerous condition before entering the lot, there existed a less dangerous, accessible route to the building, and turning around and going back home would have presented less risk than parking close to the door and walking to the dormitory. Respondent argues that a jury should decide whether she voluntarily assumed the risk of her injury, based on the answers to those questions. Respondent also contends that her daughter was a business invitee of MSU and MSU therefore had a legal duty to provide a safe premises, and that, as her daughter's visitor, Respondent was owed the same legal duty from MSU as her daughter. Lastly, Respondent avers that "[a]ccepting [MSU]'s position would subvert good public policy with bad tort law."

### Respondent's Assumption of the Risk

We agree with MSU and the Circuit Court that the question of voluntariness, in the context of an assumption of the risk analysis, is measured by an objective standard. Therefore, when the uncontroverted evidence demonstrated that Respondent knowingly and voluntarily walked across a snow and ice covered parking lot and injured herself, she assumed the risk of her injuries as a matter of law. The Circuit Court was therefore correct to grant MSU's motion for summary judgment and not send the question to the jury.

Assumption of the risk is an affirmative defense in a negligence action. *Gibson v. Beaver*, 245 Md. 418, 421, 226 A.2d 273, 275 (1967). The two leading cases on this issue are *ADM P'ship v. Martin*, 348 Md. 84, 702 A.2d 730 (1997), and *Schroyer v. McNeal*, 323 Md. 275, 592 A.2d 1119 (1991). In *ADM P'ship*, 348 Md. at 90–92, 702 A.2d at 734–35, we set forth the principles of an assumption of the risk analysis:

In Maryland, it is well settled that in order to establish the defense of assumption of risk, the defendant must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger.

\* \* \*

'The doctrine of assumption of risk rests upon an intentional and voluntary exposure to a known danger and, therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct toward [her] and to take [her] chances from harm from a particular risk.'

\* \* \*

Assumption of risk means 'voluntary incurring that of an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting.' Thus, if established, it functions as a complete bar to recovery because 'it is a previous abandonment of the right to complain if an accident occurs.'

\* \* \*

'In determining whether a plaintiff had knowledge and appreciation of the risk, an objective standard must be applied and a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him.' Thus, 'when it is clear that a person of normal intelligence in the position of the plaintiff must have understood the danger, the issue is for the court.'

\* \* \* \*

Moreover, 'there are certain risks which anyone of adult age must be taken to appreciate: the danger of slipping on ice, of falling through unguarded openings, of lifting heavy objects ... and doubtless many others.'

Concerning whether a plaintiff has voluntarily exposed him or herself to the risk of a known danger, 'there must be some manifestation of consent to relieve the defendant of the obligation of reasonable conduct.'

'The risk will not be taken to be assumed if it appears from [the plaintiff's] words, or from the facts of the situation, that

he does not in fact consent to relieve the defendant of the obligation to protect him. Nevertheless, if the plaintiff proceeds to enter voluntarily into a situation which exposes him to the risk, notwithstanding any protests, his conduct will normally indicate that he does not stand on his objection, and has consented, however reluctantly, to accept the risk and look out for himself.'

(citations omitted). In *ADM P'ship*, 348 Md. at 88, 702 A.2d at 733, Keen Martin was employed as a delivery person. On the morning after a snowstorm, she was assigned by her employer to deliver blueprints to a business. She arrived at the business and noticed snow and ice in the parking lot surrounding the building. Martin testified that she feared losing her job if she did not complete the task for her employer. *ADM P'ship*, 348 Md. at 89, 702 A.2d at 733. To deliver the blueprints, Martin exited her vehicle and walked to the building; she slipped, but caught herself and avoided falling. She made it to the building and delivered the blueprints. She then left the building and walked back to her vehicle along the same path that she had entered; however, Martin slipped and fell, injuring her back.

Martin filed a personal injury action against the owners of the building, ADM Partnership. The partnership argued that it was not liable because Martin assumed the risk of her injuries when she walked across the icy parking lot. Martin argued that she did not assume the risk because she did not walk onto the ice voluntarily; she had to walk on the ice or she would lose her job. The trial court applied an objective standard, stating that " '[e]verybody knows that walking on ice is slippery ... the assumption of the risk is [when,] with that knowledge[,]' " an individual assumes that she can walk on that ice and does so. *ADM P'ship*, 348 Md. at 90, 702 A.2d at 733 (citations omitted). The trial court found that Martin assumed the risk as a matter of law. *ADM P'ship*, 348 Md. at 90, 702 A.2d at 734. The Court of Special Appeals reversed, concluding that there existed questions of fact for the jury to decide; specifically whether Martin's beliefs that she would lose her job if she did not walk on the ice and complete the

delivery rendered her actions involuntary. This Court reversed the judgment of the Court of Special Appeals, rejecting that court's conclusion that Martin's actions were rendered involuntary because she was acting at the instruction of her employer. *ADM P'ship,* 348 Md. at 94–95, 702 A.2d at 736. We determined that despite her employer's instructions, Martin still retained a choice of whether to walk across the ice, after she realized that it would be dangerous. *ADM P'ship,* 348 Md. at 102–03, 702 A.2d at 740. We held that when Martin chose to walk across the ice, she did so knowingly and voluntarily and therefore assumed the risk as a matter of law.

Similarly, in *Schroyer,* 323 Md. at 278, 592 A.2d at 1120, Frances McNeal arrived at a hotel shortly after four inches of snow had fallen. She noticed that the area in front of the main entrance to the hotel had been cleared of ice and snow, but observed that the rest of the parking lot had not. Nonetheless, she requested a hotel room closest to an exit because she had a lot of paperwork to carry from her car to her room. *Schroyer,* 323 Md. at 278, 592 A.2d at 1120–21. The room that McNeal was given was accessible from the main lobby, but she chose to drive her car away from the main entrance to a different entrance that was closer to her room so that she could move her paperwork with greater ease. *Schroyer,* 323 Md. at 278, 592 A.2d at 1121. McNeal parked on packed ice and snow and noticed that the area was slippery. *Schroyer,* 323 Md. at 278–79, 592 A.2d at 1121. She removed her cat and some belongings from her car and entered the hotel without incident. *Schroyer,* 323 Md. at 278, 592 A.2d at 1121. On the way back to her car, however, she slipped and fell, breaking her ankle.

McNeal sued, alleging poor maintenance of the parking lot and negligent failure to warn her of the condition. *Schroyer,* 323 Md. at 276, 592 A.2d at 1120. A jury returned a verdict for McNeal. The Court of Special Appeals affirmed. Although the argument was properly preserved, the intermediate appellate court did not address whether McNeal assumed the risk of her injuries. We reversed the judgment of the

Court of Special Appeals and held that, as a matter of law, McNeal assumed the risk of her injuries. We explained:

> The test of whether the plaintiff knows of, and appreciates, the risk involved in a particular situation is an objective one, *Gibson,* 245 Md. at 421, 226 A.2d at 275, and ordinarily is a question to be resolved by the jury. *Id.*; *Kahlenberg v. Goldstein,* 290 Md. 477, 494–95, 431 A.2d 76, 86 (1981). Thus, 'the doctrine of assumption of risk will not be applied unless the undisputed evidence and all permissible inferences therefrom clearly establish that the risk of danger was *fully* known to and *understood* by the plaintiff.' *Kasten Constr. Co. v. Evans,* 260 Md. 536, 544, 273 A.2d 90, 94 (1971).
>
> On the other hand, when it is clear that a person of normal intelligence in the position of the plaintiff must have understood the danger, the issue is for the court. *Gibson,* 245 Md. at 421, 226 A.2d at 275 (*quoting* W. Prosser, Handbook of the Law of Torts § 55 at 310 (2nd ed.)). *See also Evans v. Johns Hopkins Univ.,* 224 Md. 234, 167 A.2d 591 (1961). In *Gibson,* the obvious danger identified was 'the possible physical effects on a man [of the plaintiff's] age of the effort to lift ... or drag [a heavy fuel hose] through the snow.' 245 Md. at 422, 226 A.2d at 275–76. The danger of slipping on ice was identified in Prosser as one of the 'risks which any one of adult age must be taken to appreciate.'

*Schroyer,* 323 Md. at 283–84, 592 A.2d at 1123. In examining McNeal's actions, we stated that "[i]t is clear, on this record, that McNeal took an informed chance. Fully aware of the danger posed by an ice and snow covered parking lot and sidewalk, she voluntarily chose to park and traverse it...." *Schroyer,* 323 Md. at 288, 592 A.2d at 1125. We therefore concluded that McNeal assumed the risk of her own injuries and that she did so as a matter of law. *Schroyer,* 323 Md. at 288–89, 592 A.2d at 1126. Hence, her voluntariness was not a question for the jury.

In accordance with the test most clearly articulated in *ADM P'ship,* and our reasoning and holding in *Schroyer,* it is clear that Respondent had knowledge of the risk of danger of

walking across the snowy and icy parking lot and appreciated that risk. The issue, therefore, is whether she voluntarily confronted the risk of that danger. *See ADM P'ship*, 348 Md. at 90–91, 702 A.2d at 734. In addition, as explained *supra*, these three factors are analyzed by an objective standard. *See ADM P'ship*, 348 Md. at 91, 702 A.2d at 734; *Schroyer*, 323 Md. at 283, 592 A.2d at 1123; *see also Gibson*, 245 Md. at 421, 226 A.2d at 275 (stating that "[i]n determining whether a plaintiff had knowledge and appreciation of the risk, an objective standard must be applied and a plaintiff will not be heard to say that he [or she] did not comprehend a risk which must have been obvious to him [or her]").

Respondent's own testimony made clear that she was aware of the snow and ice in the parking lot. She testified that as soon as she drove into the parking lot, she noticed that she was driving "on crunchy ice and snow." She stated further that she thought, "doggone, they didn't clean this parking lot." Respondent's behavior demonstrates that she was also aware of the risk, and appreciated the risk, of danger of walking on snow and ice. She explained that she walked very slowly, held onto the cars as she walked, and held onto the railing as she walked slowly up the steps. In addition, Respondent explained that she looked down at the ground "to make sure that [she] didn't slip and fall." Moreover, as we stated in both *ADM P'ship* and *Schroyer*, "[t]he danger of slipping on ice . . . [is] one of the 'risks which any one of adult age must be taken to appreciate.'" *Schroyer*, 323 Md. at 284, 592 A.2d at 1123; *ADM P'ship*, 348 Md. at 92, 702 A.2d at 734 (citations omitted).

Nothing in the record suggests that Respondent was forced against her will to confront the risk of danger of walking on the snow and ice, such that her behavior could be classified as involuntarily. After hearing the crunch of ice and snow under her tires and acknowledging that MSU had not removed the ice and snow from the parking lot, she proceeded to get out of her car and visit with her daughter. Respondent's motivation stemmed from the fact that she believed that her daughter needed money. In accordance with our prior holdings, Re-

spondent's actions would be considered involuntary only if she lacked the free will to avoid the situation. *See ADM P'ship,* 348 Md. at 94–95, 702 A.2d at 736 (holding that Martin proceeded voluntarily in the face of danger despite the fact that she thought she would lose her job if she did not deliver the blueprints); *Gibson,* 245 Md. at 422, 226 A.2d at 276 (stating that even though Gibson was told that he could not have fuel oil in his house if he did not pull the oil hose from the truck to his house, Gibson acted voluntarily because he still had the choice to accept or reject the fuel oil); *Burke v. Williams,* 244 Md. 154, 158, 223 A.2d 187, 189 (1966) (concluding that appellant acted voluntary when he walked on the slippery, poorly constructed walkway because he was not forced against his will to do so). Therefore, the fact that Respondent wanted to bring her daughter money for gas does not render her actions involuntary.

Respondent argues that *Schroyer* is not apposite here because in *Schroyer,* McNeal had other alternative paths upon which to walk and, in the case *sub judice,* Respondent states that she did not have any other reasonable alternative paths from her car to her daughter's dormitory. We disagree with this interpretation of *Schroyer.* Our holding in *Schroyer* was not based upon the existence of other alternatives. *Schroyer,* 323 Md. at 288, 592 A.2d at 1125. Our conclusion was based upon the fact that McNeal knowingly and voluntarily assumed the risk when she walked across the parking lot. That McNeal could have parked near the entrance and walked on the cleared portion of the parking lot merely provided additional support for our conclusion in *Schroyer.* Moreover, Respondent had alternatives in this case—as soon as she heard the ice underneath her tires, she could have turned her car around and gone home or arranged an alternative plan by which to get her daughter money, instead of voluntarily proceeding in the face of danger by leaving her car and traversing across ice and snow. *Schroyer* is therefore dispositive.

"As we have stated in earlier cases involving the assumption of the risk defense, 'where the facts are not in dispute and the

plaintiff intentionally and voluntarily exposed [himself or] herself to a known danger, we will sustain the granting of a summary judgment or the direction of a verdict.'" *ADM P'ship,* 348 Md. at 103, 702 A.2d at 740 (quoting *Burke,* 244 Md. at 158, 223 A.2d at 189; *citing Schroyer,* 323 Md. at 288–89, 592 A.2d at 1126; *Gibson,* 245 Md. at 422, 226 A.2d at 276; *Evans,* 224 Md. at 239, 167 A.2d at 594; *Finkelstein v. Vulcan Rail and Constr. Co.,* 224 Md. 439, 441, 168 A.2d 393, 394 (1961)). We therefore reverse the portion of the judgment of the Court of Special Appeals that vacated the Circuit Court's grant of summary judgment in favor of MSU.

### Relevancy of MSU's Negligence

■ Respondent argues that several questions need to be answered to assess correctly whether Respondent voluntarily walked across the icy parking lot, and that, the jury should then determine whether she assumed the risk of her injuries based on the answers to those questions. We disagree. Many of the questions posed by Respondent examine whether MSU was negligent in its failure to clear the parking lot of snow and ice. In an assumption of the risk analysis, however, the defendant's or a third party's negligence is irrelevant.

■ We can assume, for the sake of argument, that Respondent is correct and that MSU was negligent in failing to clear the parking lot and walkways of snow and ice. This assumption does not change our analysis or our conclusion. As this Court has previously explained "the assumption of the risk defense exists independently of the conduct of another person, whether the defendant or a third party. Therefore, the existence of a defendant's duty is not an issue because that speaks to the defendant's negligence, which is not required to establish assumption of risk." *ADM P'ship,* 348 Md. at 102, 702 A.2d at 740. Similarly, in *Schroyer,* 323 Md. at 282, 592 A.2d at 1123, we explained that in an assumption of the risk analysis, "by virtue of the plaintiff's voluntary actions, any duty the defendant owed the plaintiff to act reasonably for the plaintiff's safety is superseded by the plaintiff's willingness to take a chance." We have also explained that

[t]he defense of assumption of risk rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from a particular risk. Such consent may be found . . . by implication from the conduct of the parties. When the plaintiff enters voluntarily into a relation or situation involving obvious danger, he may be taken to assume the risk, and to relieve the defendant of responsibility. Such implied assumption of risk requires knowledge and appreciation of the risk, and a voluntary choice to encounter it.' Prosser, *Torts,* § 55, p. 303 (2d ed. 1955).

*Gibson,* 245 Md. at 421, 226 A.2d at 275.

Respondent also argues that *Rountree v. Lerner Dev. Co.,* 52 Md.App. 281, 447 A.2d 902 (1982), is apposite here. She contends that MSU owed a duty to her daughter because her daughter was a business invitee of MSU and that MSU therefore owed Respondent the same duty, because Respondent was her daughter's guest. In that case, Ginger Rountree exited her apartment building through the only available means of egress in order to go to work. *Rountree,* 52 Md.App. at 283, 447 A.2d at 903. It had snowed the night before and the stairs were icy and slippery. She went to work late to allow time for the ice to thaw and despite her walking slowly and carefully, still fell on the steps and injured herself. *Rountree,* 52 Md.App. at 283–84, 447 A.2d at 903–04. She sued the owner and operator of her apartment complex. *Rountree,* 52 Md.App. at 282, 447 A.2d at 902. The intermediate appellate court determined that Ms. Rountree did not assume the risk of her injuries because she had a right to leave her apartment to go to work, and that the lack of a reasonable alternative route created a jury question as to the voluntariness of her conduct. *Rountree,* 52 Md.App. at 285–86, 447 A.2d at 904–05.

We decline to adopt the reasoning of *Rountree* because it is inapplicable here.[3] The present case does not involve a situa-

---

**3.** *See also Odenton Dev. Co. v. Lamy,* 320 Md. 33, 575 A.2d 1235 (1990), where we declined to adopt *Rountree.* In *Lamy,* Bernice Lamy attempt-

tion where Respondent's daughter (a tenant) was trapped inside her dormitory because of ice and snow, and, while trying to leave the dormitory, slipped and fell on the ice.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. RESPONDENT TO PAY THE COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS.**

ed to step over a mound of snow to put her groceries in her car and fell, injuring herself. *Lamy*, 320 Md. at 36, 575 A.2d at 1236. She sued the owner and operator of the grocery store. *Lamy*, 320 Md. at 36–37, 575 A.2d at 1236. At trial, the judge submitted the following instructions to the jury:

> The defense of assumption of the risk rests upon the Plaintiff's consent to relieve the Defendant of obligation of conduct toward the Plaintiff and to take his chances of harm from a particular risk ... such consent may be found by implication from the conduct of the party. When a Plaintiff enters voluntarily into a situation involving obvious danger, the Plaintiff may be taken to assume the risk and relieve the Defendant of responsibility. Such implied assumption of risk involves knowledge and appreciation of the risk and voluntary choice to encounter it.

*Lamy*, 320 Md. at 43, 575 A.2d at 1239–40. The respondent argued that the jury should have been told that if it determined that there existed no alternative safe routes of exit out of the grocery store, then it could not find that the respondent assumed the risk because she had a right of egress as a business invitee. *Lamy*, 320 Md. at 42, 575 A.2d at 1239. She argued that *Rountree* was dispositive to the analysis of her case. The trial court rejected that jury instruction and we determined that the trial court did not err in doing so. *Lamy*, 320 Md. at 43, 575 A.2d at 1240. We stated explicitly that the respondent's "reliance on *Rountree* [wa]s misplaced" and that there existed no error in the trial court's instructions because the record demonstrated that the respondent knew of the conditions, was aware of the alternatives to stepping over snow to get to her car, and that she voluntarily chose to put the groceries in her car in the manner that she did. *Lamy*, 320 Md. at 43–44, 575 A.2d at 1239–40.