31 A.3d 583

Mary THOMAS

v.

PANCO MANAGEMENT OF MARYLAND, LLC, et al.

No. 133, Sept. Term, 2010.

Court of Appeals of Maryland.

Oct. 31, 2011.

Steven M. Weisbaum (The Weisbaum Law Firm, Rockville, MD), on brief, for petitioner.

Gregg E. Viola (Mark Anthony Kozlowski of Eccleston & Wolf, P.C., Hanover, MD), on brief, for respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, * MURPHY, ADKINS and BARBERA, JJ.

GREENE, J.

Petitioner, Mary Thomas, filed a negligence action in the Circuit Court for Prince George's County against the owner of her apartment complex, Foxfire Associates Limited Partnership d/b/a Foxfire Apartments, and the apartment management company, Panco Management of Maryland, LLC (collec-

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

tively Respondents). Petitioner's personal injury claim stems from a slip and fall incident on "black ice"[1] that occurred on the premises of the apartment complex. Respondents filed, and the court granted, a motion for judgment at the end of Petitioner's case based on Petitioner's alleged assumption of the risk. Based on the record before us, we cannot say, as a matter of law, that Petitioner assumed the risk of slipping and falling on black ice when she exited her apartment building. Therefore, we shall hold that the trial judge erred by failing to submit the issue of assumption of the risk to the jury for resolution.

## FACTS AND PROCEDURAL HISTORY

On February 21, 2007, Petitioner lived in the Foxfire Apartments complex in Laurel, Maryland, with her daughter and granddaughter. Petitioner had resided in her apartment since 1998. The evidence produced at trial showed that the primary means of egress from the apartment complex to the parking lot where Petitioner kept her car was a central, covered flight of stairs, followed by four additional stairs that led to a sidewalk. There was also a separate, back exit from the central stairway that led to an "unpaved, dirt area."

Petitioner testified that the front of her apartment complex did not get much direct sunlight. Consequently, in the winter months snow and ice would melt more slowly than in other locations. Petitioner also stated that she knew that when

---

1. As we recently noted in *Poole v. Coakley & Williams Constr., Inc.*, 423 Md. 91, 31 A.3d 212 (2011), "Black ice" is a unique weather condition that does not necessarily pose the same risk as snow or visible "white ice." Black ice is difficult to see because it reflects less light than regular ice, and therefore does not appear glossy or slick, "which is a result of its columnar grain structure." *See* American Meteorological Society, *Glossary of Meteorology* 88 (2d ed.2000). The National Oceanic and Atmospheric Administration has called "black ice" a "slang reference to patchy ice on roadways or other transportation surfaces that cannot easily be seen." National Oceanic and Atmospheric Administration, *Black Ice*, National Weather Service Glossary, http://www.weather.gov/glossary/index.php?word=black+ice.

snow and ice melted, the sidewalk would become wet and that icy conditions could develop in freezing temperatures.

At approximately 8:30 a.m. on the morning of the injury, Petitioner left her apartment to go to work. Petitioner walked down the steps of the primary exit and over the sidewalk to the parking lot, where she noticed some patches of ice and snow. When she arrived at her vehicle, she had to hold onto it for support due to the surrounding conditions. When Petitioner returned from work between 2:30 and 3:00 p.m., the temperature had "warmed up" and she noticed that the ice and snow had melted but that the sidewalks were wet.

Petitioner left her apartment again at approximately 6:00 p.m. on the evening of the accident to drop off her granddaughter at a youth group meeting at a nearby church. Petitioner returned home at approximately 6:15 p.m. When she arrived home, Petitioner again noticed that the sidewalk in front of her apartment was wet, but she saw no sign of salt or melting pellets on the sidewalk or walkway. At approximately 8:00 p.m., Petitioner left her apartment to pick up her granddaughter from the meeting. Petitioner alleges that she had just stepped down from the last step of the stairway onto the sidewalk when she slipped and fell on ice, which she could not see and did not know was on the stairway. After the fall, Petitioner's neighbor, Jean Gillette, came outside to assist Petitioner. As Ms. Gillette stepped off of the last step onto the sidewalk she too slipped, but did not fall, on what she described as "black ice." As a result of the incident, Petitioner suffered a compound fracture in her right leg. She filed a negligence action in the Circuit Court for Prince George's County against Respondents. At trial, Lawrence Dinoff, qualified as an expert in "forensic architecture," described in his testimony the peculiar characteristics of the sidewalk that allowed it to foster the accumulation of ice when it became wet from melted snow. In addition to testifying that the high temperature on the day of the accident was fifty-one degrees, Mr. Dinoff stated that the temperature did not go below freezing until about "an hour before ... [Petitioner's] fall occurred."

At the conclusion of Petitioner's presentation of her case, Respondents moved for judgement, asserting the defenses of contributory negligence and assumption of the risk. While the trial judge denied the motion as to contributory negligence, he granted the motion for judgment on the grounds that Petitioner had assumed the risk of her injury as a matter of law.[2] Noting that the Court of Special Appeals had decided *Allen v. Marriott Worldwide Corp.*, 183 Md.App. 460, 961 A.2d 1141 (2008), *cert. denied, Allen v. Marriott,* 408 Md. 149, 968 A.2d 1065 (2009) the previous day, the trial court concluded that Petitioner had knowledge of the risk of slipping on black ice as a matter of law. In addition, as to the voluntariness requirement of the assumption of the risk defense, the court rejected Petitioner's argument that *Rountree v. Lerner Dev. Co.,* 52 Md.App. 281, 447 A.2d 902 (1982), controlled, and ruled that Petitioner had encountered the danger voluntarily.

The Court of Special Appeals affirmed. *Thomas v. Panco Mgmt. of Md., LLC,* 195 Md.App. 245, 6 A.3d 304 (2010). Also relying on the reasoning of *Allen,* it concluded that Petitioner had knowledge of the risk of slipping on black ice. The court also concluded that Petitioner had assumed the risk of her injury voluntarily, and opined that *Rountree* was no longer good law. We granted Petitioner's writ of certiorari, *Thomas v. Panco Mgmt.,* 418 Md. 190, 13 A.3d 798 (2011), which asked us to determine "[w]hether the Court of Special Appeals erred when it affirmed the judgment of the Circuit Court concluding, as a matter of law, that the Petitioner knowingly and voluntarily assumed the risk of slipping on 'black ice' when she left her apartment. . . ."

## I.

We review the trial court's grant of Respondents' motion for judgment *de novo,* considering the evidence and

---

**2.** As discussed, *infra,* the three requirements of the assumption of the risk defense are that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger. *ADM P'ship v. Martin,* 348 Md. 84, 90–91, 702 A.2d 730, 734 (1997).

reasonable inferences drawn from the evidence in the light most favorable to the non-moving party. *See* Md. Rule 2–519; *C & M Builders, LLC v. Strub*, 420 Md. 268, 290, 22 A.3d 867, 880 (2011); *Scapa Dryer Fabrics, Inc. v. Saville*, 418 Md. 496, 503, 16 A.3d 159, 163 (2011). Under Maryland Rule 2–519,[3] when a defendant moves for judgment based on an affirmative defense, or upon the legal insufficiency of the plaintiff's evidence, the trial judge must determine if there is "any evidence, no matter how slight, that is legally sufficient to generate a jury question," and if there is, the motion must be denied and the case submitted to the jury. *C & M Builders*, 420 Md. at 290, 22 A.3d at 880 (quoting *Tate v. Bd. of Educ.*, 155 Md.App. 536, 545, 843 A.2d 890, 895 (2004)). It is only when the "facts and circumstances only permit one inference with regard to the issue presented," that the issue is one of law for the court and not one of fact for the jury. *Scapa*, 418 Md. at 503, 16 A.3d at 163. An appellate court must review the grant or denial of a motion for judgment by conducting the same analysis as the trial judge. *C & M Builders*, 420 Md. at 291, 22 A.3d at 880; *Tate*, 155 Md.App. at 545, 843 A.2d at 896.

Thus, the grant of Respondents' motion for judgment based on assumption of the risk was appropriate only if all evidence and reasonable evidentiary inferences, viewed in a light most favorable to Petitioner, could have led only to the conclusion that she assumed the risk of her injuries. *C & M Builders*, 420 Md. at 291, 22 A.3d at 880. In arguing that the motion was improperly granted, Petitioner first contends that in *Allen*, the Court of Special Appeals misinterpreted Maryland's assumption of the risk doctrine and that the *Allen* holding, relied upon by the trial court and the intermediate appellate

---

3. Maryland Rule 2–519 states, in pertinent part:

(b) Disposition. When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

court in the instant case, invaded the province of the jury by allowing judges to weigh evidence and impute constructive knowledge of a risk to a plaintiff as a matter of law. Secondly, Petitioner argues that the courts' disavowal of *Rountree* and their interpretation of the voluntariness element in instant case will bar recovery for all tenants who slip and fall on ice in the common approaches and walkways of their apartment complexes. We agree and shall address each of these contentions in turn.

## II.

In Maryland, there are three requirements that a defendant must prove to establish the defense of assumption of the risk: (1) the plaintiff had knowledge of the risk of the danger; (2) the plaintiff appreciated that risk; and (3) the plaintiff voluntarily confronted the risk of danger. *ADM P'ship,* 348 Md. at 90–91, 702 A.2d at 734. The question of whether the plaintiff had knowledge and appreciation of the particular risk at issue is ordinarily a question for the jury, "unless the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff." *Schroyer v. McNeal,* 323 Md. 275, 283, 592 A.2d 1119, 1123 (1991) (quotation omitted) (emphasis added). Where it is clear, however, "that a person of normal intelligence in the position of the plaintiff *must* have understood the danger, the issue is for the court." *Schroyer,* 323 Md. at 283, 592 A.2d at 1123 (emphasis added); *accord Gibson v. Beaver,* 245 Md. 418, 421, 226 A.2d 273, 275 (1967).

*Allen v. Marriott Worldwide Corp.,* 183 Md.App. 460, 961 A.2d 1141 (2008), was decided during the course of the trial in instant case. As discussed, *supra,* both the trial court and the intermediate appellate court relied on that case to conclude that Petitioner had knowledge of the risk of slipping on ice as a matter of law. *Allen* has since been disavowed by this Court in *Poole v. Coakley & Williams Constr., Inc.,* 423 Md. 91, 31 A.3d 212, 2011 WL 5100994 (2011). *Poole* presented similar facts and legal questions to those in the instant case,

the main issue for resolution being whether Petitioner in that case knew of the risk of slipping and falling on black ice as a matter of law. *Id.* In *Poole,* we explained the essential portions of the *Allen* opinion of which we disapproved. We said:

In *Allen,* the Court of Special Appeals affirmed the trial judge's grant of summary judgment in favor of the defendant, Marriott Corporation, on the ground that one of its guests, Mr. David Allen, had assumed the risk of slipping and falling on black ice while walking across the parking lot from the entrance of the hotel to his wife's car. *Allen,* 183 Md.App. at 462, 478–80, 961 A.2d at 1142, 1151–52.

Notwithstanding the fact that black ice is, by its nature, invisible or difficult to see, the *Allen* court stated that "the path to knowledge is not limited to the sense of sight alone.... Knowledge springs not only from direct sense perception but from the drawing of inferences from circumstantial evidence. Induction is as worthy a highway to knowledge as is sensation." *Allen,* 183 Md.App. at 473, 961 A.2d at 1149. The court concluded that because the plaintiff had testified that he observed visible ice and snow in the vicinity prior to his slip and fall and "acknowledged his general familiarity with the phenomenon of black ice" that "when the bits and pieces of information about the appellant's awareness of risk came together, they were enough, objectively, to achieve critical mass" and so "[t]he question was properly one of law for the court to decide on summary judgment." *Allen,* 183 Md.App. at 476, 478–79, 961 A.2d at 1150–51. The *Allen* court bolstered its holding with the following reasoning, in which we also find error:

To assume a risk as a matter of law, a plaintiff, objectively speaking, must have reason to know of the risk. In a case such as this, the risk is that of slipping on ice. The required knowledge is not knowledge that ice is actually present. It is the appreciation of the reasonable likelihood that, under the weather conditions and other circumstances, ice might well be present. The assumed risk is not that of stepping on ice per se. The assumed risk is

that of stepping onto an unknown surface with an awareness that it might well be icy.  With white ice, you see it is there.  With black ice, you infer the likelihood that it may be there.  Either establishes the element of awareness.

*Poole v. Coakley & Williams Constr., Inc.*, 423 Md. 91, 31 A.3d 212 (2011).  In granting Respondents' motion for judgment, the trial court in instant case relied primarily on the *Allen* court's reasoning, stating:

I find this is almost exactly the *Allen* case.  The test as set forth in the *Allen* decision is [that] a plaintiff objectively speaking must have reason to know of the risk.  In a case such as this, the risk is that of slipping on ice.  The required knowledge is not knowledge that ice is actually present, which is what we all were talking about prior to yesterday, but it is the appreciation of the reasonable likelihood that under the weather conditions and other circumstances, ice might well be present.

The assumed risk is not that of stepping on ice, per se.  The assumed risk is of stepping onto an unknown surface with an awareness that it might well be icy.  With white ice, you see it there.  With black ice, you infer the likelihood that it may be there.  Either establishes the element of awareness.

So, I do find that as a matter of law, she was or should have been aware of the risk, that she appreciated it because she said she was familiar with it, and that she voluntarily assumed that risk by undertaking to cross it that day.

On review, the intermediate appellate court similarly found *Allen* to be apposite in the present case.  It stated: "We agree with [the trial judge] that the uncontradicted first-level facts developed in this case objectively showed that [Mary] Thomas, like David Allen, had at the time of her fall, knowledge of the risk that she might be stepping down upon ice and that a reasonable person in her position would have appreciated the danger of that action." *Thomas*, 195 Md.App. at 256, 6 A.3d at 311.

It was error for the trial court to rule, as a matter of law, that Petitioner had knowledge of the risk for the same reasons we explained in *Poole,* namely that the *Allen* case expanded the knowledge prong of the assumption of the risk test to permit the trial judge to impute knowledge under circumstances where the risk of danger may not have been fully known to and understood by the plaintiff. Thus, we restate our reasoning in *Poole* at length because of its applicability to the present case:

> *Allen* expands the knowledge prong of the assumption of the risk test to permit the trial judge to impute knowledge under circumstances where the risk of danger may not have been fully known to and understood by the plaintiff, thereby enlarging the category of cases in which a court may impute knowledge to a plaintiff as a matter of law.

As explained, *supra,* "the doctrine of assumption of risk will not be applied [as a matter of law] unless the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff." *Schroyer,* 323 Md. at 283, 592 A.2d at 1123 (emphasis added). When it is clear, however, "that a person of normal intelligence in the position of the plaintiff *must* have understood the danger, the issue is for the court." *Id.* Thus, in order for a plaintiff to have assumed the risk of his or her injuries as a matter of law, we require that a plaintiff "must" have known that the risk was "actually present," not that he or she "would," "should," or "could" have known that the risk "might well be present." *See Kasten Constr. Co. v. Evans,* 260 Md. 536, 544–45, 273 A.2d 90, 94 (holding that even though defendant argued that plaintiff, a utility linesman, "should have known" of the danger involved in climbing a utility pole, the issue was properly one for the jury because there were no signs of structural instability, and his knowledge of the danger was not clear and undisputed); *cf. McClearn [v. Southeast Concrete Co.],* 253 Md. [135] at 139, 251 A.2d [896] at 899 (stating that plaintiff was experienced in the cement finishing business, and therefore "certainly *must* have been

aware" of the danger of directing the driver in the process of backing up a cement truck) (emphasis added); *see also Martin v. Heddinger*, 373 N.W.2d 486, 490 (Iowa 1985) ("[A]ssumption of risk is a matter of whether the plaintiff knew of the risk, not whether the plaintiff should have known of it.").

The *Allen* court's formulation diminishes the requirement that a plaintiff actually and fully know and understand the risk he or she is confronting and proposes that a plaintiff may be judicially charged with knowledge in a circumstance where he or she should *infer* the existence of a dangerous condition.

Maryland jurisprudence, however, directs that courts may only impute knowledge to the plaintiff, as a matter of law, when there is undisputed evidence of awareness, *e.g.*, physical interaction with or sensory perception of the dangerous condition in the case of *Schroyer*, *ADM P'ship*, or *Morgan State;* the risk of danger is so obvious that any person of normal intelligence will be taken to comprehend it, as in *Gibson* or *C & M*; or the risk is an usual and foreseeable consequence of the plaintiff's conduct, as in *Cotillo*.

Beyond these circumstances, we have held that "[w]here there is a dispute whether the risk is assumed or not, that question is usually left to the jury[,]" *Bull S.S. Lines [v. Fisher]*, 196 Md. [519] at 526, 77 A.2d [142] at 146, because the role of the fact finder is to assess the credibility of the evidence and to draw a conclusion from among the inferences which may be reasonably drawn from that evidence. *See American Law of Torts,* § 12:53, at 433 ("Only where reasonable men could not differ as to the conclusion to be reached, the court itself may determine the issue.")

In *Allen,* the plaintiff testified that he had crossed the parking lot without incident after the snowfall but prior to his slip and fall. Also, while he observed visible ice and snow piled against the curb of the parking lot, he had not seen any in the area of the lot on which he stepped, and did not see the ice upon which he fell. The intermediate appellate court aptly defined "black ice," and described the

"meaningful contrast" between "white ice" and "black ice," as "between essentially visible ice and essentially invisible ice." 183 Md.App. at 469–470, 961 A.2d at 1146–47. Whereas the *Allen* court did not find the invisibility of the black ice to be a significant factor in withholding judicial imputation of knowledge to the plaintiff, this Court does. 183 Md.App. at 472–73, 961 A.2d at 1148–49. While, indeed, "the path to knowledge is not limited to the sense of sight alone," it is not for the courts, as a matter of law, to determine that although a danger was, by its nature, imperceptible by direct sensation, "inferences from circumstantial evidence" were drawn by a particular plaintiff. *Allen,* 183 Md.App. at 473, 961 A.2d at 1149. The *Allen* court's statement that the requisite knowledge at the time of injury is not knowledge that ice is *actually* present, but, rather, "the appreciation of the reasonable likelihood that, under the ... circumstances ice *might well be* present" negates the legal truism that assumption of the risk "rests upon an intentional and voluntary exposure to a *known* danger and, therefore, *consent* on the part of the plaintiff to relieve the defendant of an obligation of conduct toward him and to take his chances from harm from a *particular* risk." *Crews,* 358 Md. at 640–41, 751 A.2d at 488 (internal quotations omitted) (emphasis added). Thus, it was error to find, as a matter of law, that the plaintiff in *Allen* had knowledge of the risk of slipping on black ice when the evidence showed only an "awareness that it might" exist and an inference could have been drawn that it "may be there." *Allen,* 183 Md.App. at 479–80, 961 A.2d at 1152. Rather, for a court to impute knowledge as a matter of law, the evidence and all permissible inferences must make clear that the plaintiff had full, actual, and subjective knowledge of the risk or that "a person of normal intelligence in the position of the plaintiff *must* have understood the danger." *See Schroyer,* 323 Md. at 283–84, 592 A.2d at 1123 (emphasis added). In the absence of this level of proof, any determinations as to "bits and pieces of information" required to achieve a "criti-

cal mass" sufficient to impute knowledge to a plaintiff, is a puzzle properly put together by the jury.

In the instant case, there were factual issues creating a jury question as to Petitioner's knowledge of the risk of slipping on black ice. In ruling on the knowledge prong, the trial judge found the following:

> In this case, there is no dispute about the underlying facts ... that the sidewalk was wet. It was observed to be wet and known to be wet by the plaintiff on the four other occasions that she traversed it that day. [A]nd ... that the weather was getting colder. She said she saw no salt or any evidence of any salting being done. And that she was aware, as were all of her neighbors, that water would collect in that area, melting snow made the sidewalks wet, and thus they all took due care being cautious and looking for ice. She didn't see any sign of any maintenance activity that day, that evening. She wasn't looking for salt, and she wasn't looking for ice. And nonetheless, she did attempt to traverse that wet area and fell.

■ Contrary to the trial judge's ruling, the facts do not point only to the conclusion that Petitioner assumed the risk of her injuries. *See C & M Builders,* 420 Md. at 291, 22 A.3d at 880; *Gibson,* 245 Md. at 421, 226 A.2d at 275; Stuart Speiser, Charles Krause & Alfred Gans, *The American Law of Torts* § 12:53, at 433 (2008) (hereinafter *American Law of Torts* ) ("Only where reasonable men could not differ as to the conclusion to be reached, the court itself may determine the issue."). Likewise, the permissible inferences from the undisputed evidence do not clearly establish that the risk of danger was fully known to and understood by the Petitioner. *Schroyer,* 323 Md. at 283, 592 A.2d at 1123.

Indeed, several of the facts relied upon by the trial court in the present case to grant judgment as a matter of law, including the fact that Petitioner did not see any maintenance activity or salt on the walkway, could lead just as easily to the inference that Petitioner did not have knowledge of the "essentially invisible" ice. *Allen,* 183 Md.App. at 469–70, 961

A.2d at 1147. Other facts, selectively disregarded by the court, further support this position. For example, the weather in the days leading up to the accident was warm and dry, there was a high temperature of fifty-one degrees on the day of the accident, and the temperature had just fallen below freezing in the hour before the accident occurred. Also, the walkways had been traversed previously that day without incident by Petitioner and, while they appeared wet, there was no visible accumulation or puddles of water. Further, Petitioner's neighbor testified that when she came out to render assistance to Petitioner, she saw no ice on the walkway in the vicinity of Petitioner's fall, and the spot where Petitioner fell appeared to be water rather than ice. Also, Petitioner presented the testimony of a forensic architect, Mr. Dinoff, who testified, "[Y]ou can have ice in a very thin layer on a concrete sidewalk that will not appear slippery because it's not thick enough to overcome the natural traction of a rough sidewalk."

█ As explained, *supra*, granting a motion for judgment under Maryland Rule 2–519 is only appropriate if all evidence and reasonable evidentiary inferences, viewed in a light most favorable to the non-moving party, lead to only one conclusion—here, that Petitioner assumed the risk of her injuries. *C & M Builders*, 420 Md. at 291, 22 A.3d at 880; *Scapa*, 418 Md. at 503, 16 A.3d at 163; *Tate*, 155 Md.App. at 545, 843 A.2d at 896. If there is "any evidence, no matter how slight, that is legally sufficient to generate a jury question," then the motion must be denied and the case submitted to the jury. *C & M Builders*, 420 Md. at 290, 22 A.3d at 880 (quoting *Tate*, 155 Md.App. at 545, 843 A.2d at 895). As we explained in *Poole*, knowledge should not be imputed as a matter of law where the facts or the reasonable inferences from the facts are in dispute. *Poole v. Coakley & Williams Constr., Inc.*, 423 Md. 91, 31 A.3d 212 (2011); *C & M Builders*, 420 Md. at 291, 22 A.3d at 880. Given the evidence and testimony summarized above, it is clear that this standard was not followed because the facts and inferences applicable to the issue of Petitioner's knowledge lend themselves to more than one conclusion. Therefore, whether Petitioner assumed the risk of her injuries

was a question of fact and should have been answered by the trier of fact, in this case the jury.

## III.

Petitioner also contends that the grant of Respondents' motion for judgment was improper because she did not encounter the danger voluntarily, and thus did not assume the risk of her injuries. Relying on *Rountree v. Lerner Dev. Co.*, 52 Md.App. 281, 447 A.2d 902 (1982), Petitioner contends that Respondents, by failing to provide her with a reasonably safe means of ingress to and egress from her apartment, constrained her freedom of choice and coerced her into encountering the risk of slipping on black ice.

This Court in *ADM P'ship*, endorsed the principle announced by Prosser and relied upon by the intermediate appellate court in *Rountree* that:

> [T]here can be no restriction on the plaintiff's freedom of choice either by the existing circumstances or by coercion emanating from the defendant. This is so because even where the plaintiff does not protest, the risk is not assumed where the conduct of the defendant has left [the plaintiff] no reasonable alternative. Where the defendant puts [the plaintiff] to a choice of evils, there is a species of duress, which destroys the idea of freedom of election.

*ADM P'ship*, 348 Md. at 92–93, 702 A.2d at 735 (quoting W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 68, at 490–91 (5th ed.1984) (hereinafter *Prosser and Keeton* )); *accord Rountree*, 52 Md.App. at 285, 447 A.2d at 904. We further explained:

> The plaintiff's acceptance of the risk is to be regarded as voluntary even though he is acting under the compulsion of circumstances, not created by the tortious conduct of the defendant, which have left him no reasonable alternative. Where the defendant is under no independent duty to the plaintiff, and the plaintiff finds himself confronted by a choice of risks, or is driven by his own necessities to accept

a danger, the situation is not to be charged against the defendant.

*ADM P'ship.,* 348 Md. at 93, 702 A.2d at 735 (quoting Restatement (Second) of Torts § 496E cmt. b).

We recognize *Rountree* as an example of a landlord-tenant situation, where the plaintiff may have acted under the compulsion of circumstances "created by the tortious conduct of the defendant, which ... left [the plaintiff] no reasonable alternative" and therefore the plaintiff could not be held to have assumed the risk of her injuries as a matter of law. *ADM P'ship.,* 348 Md. at 93, 702 A.2d at 735. Our post-*Rountree* case law has not implicitly overruled *Rountree,* as suggested by the trial court and intermediate appellate court in this case.

In *Rountree,* the plaintiff, a tenant, slipped and fell on ice while leaving her apartment to go to work. *Rountree,* 52 Md.App. at 282, 447 A.2d at 902–03. There was evidence that she exited from the only means of egress from the building. *Rountree,* 52 Md.App. at 283–85, 447 A.2d at 903–04. According to the facts presented, the plaintiff knew about the ice and snow outside of her apartment, and she had decided to leave for work later than usual because she believed that the conditions outside would improve or that maintenance would clear the hazard. *Rountree,* 52 Md.App. at 283, 285, 447 A.2d at 903–04. Despite the plaintiff's efforts to wait for the conditions to improve, and her efforts to use care while exiting her apartment, she slipped on the ice and sustained injuries while walking to her car. *Rountree,* 52 Md.App. at 283–84, 447 A.2d at 903–04. The trial court ruled that she had assumed the risk of her injuries as a matter of law. *Rountree,* 52 Md.App. at 282, 447 A.2d at 903.

On appeal, the intermediate appellate court held that the plaintiff's knowledge of the danger, *i.e.,* the risk of slipping on ice, was not dispositive because knowledge "is simply one of two limitations on the defense of assumption of risk...." *Rountree,* 52 Md.App. at 284, 447 A.2d at 904. The court quoted Prosser to explain that:

The second important limitation upon the defense of assumption of risk is that the plaintiff is not barred from recovery unless his choice is a free and voluntary one. There must first of all, of course, be some manifestation of consent to relieve the defendant of the obligation of reasonable conduct. It is not every deliberate encountering of a known danger which is reasonably to be interpreted as evidence of such consent.

*Rountree*, 52 Md.App. at 284, 447 A.2d at 904 (quoting William L. Prosser, *Handbook of the Law of Torts* § 68, at 450 (4th ed.1971) (hereinafter Prosser, 4th ed.)).

While the *Rountree* court found that there was clear and decisive evidence of a "deliberate encountering of a known danger" by the plaintiff, it also pointed out that "the tenant had a right to egress from her apartment" and "a right to assume that the landlord would take all appropriate steps to make safe egress possible." *Rountree*, 52 Md.App. at 285, 447 A.2d at 904. Thus, the court noted that the plaintiff's conscious decision to encounter the risk may not have been voluntary, and again quoted Prosser:

Even where the plaintiff does not protest, the risk is not assumed where the conduct of the defendant has left him no reasonable alternative. Where the defendant puts him to a choice of evils, there is a species of duress, which destroys all idea of freedom of election. Thus ... a tenant *does not assume the risk of the landlord's negligence in maintaining a common passageway when it is the only exit to the street.* In general, the plaintiff is not required to surrender a valuable legal right, such as the use of his own property as he sees fit, merely because the defendant's conduct has threatened him with harm if the right is exercised.... By placing him in the dilemma, the defendant has deprived him of his freedom of choice, and so cannot be heard to say that he has voluntarily assumed the risk.

*Rountree*, 52 Md.App. at 285–86, 447 A.2d at 904 (quoting Prosser, 4th ed. § 68, at 451). The intermediate appellate court found that because there was no evidence that the

plaintiff had a reasonably safe alternative route of egress from her apartment, she had not voluntarily assumed the risk of her injuries as a matter of law; rather, the issue of voluntariness was "at the very least" a question for the jury. *Rountree,* 52 Md.App. at 286, 447 A.2d at 905. The court also noted, however, that "[i]f there had been evidence in this case that there was a reasonable and safe alternative route of egress open to the [plaintiff] and that she deliberately chose the shorter but more dangerous route, that might well establish as a matter of law that she was guilty of having assumed the risk."[4] *Id.*

██ In the case *sub judice,* the trial court erroneously concluded that *Rountree* was no longer good precedent, and erred when it decided that Petitioner voluntarily assumed the risk of her injury as a matter of law. The trial court stated:

> I, frankly, don't believe that this analysis by Judge Moylan in 1982 is the law in Maryland any longer. All of the cases that he cited in the *Allen* case, *Schroyer, ADM Partnership,* and *Morgan State* post-date *Rountree* [sic] by a great deal of time. I don't believe that the voluntariness is this. I believe that taking Judge Moylan's argument here really, in essence, does make the landlord the guarantor of any harm to the tenants, which is not the law in Maryland.[5]

\* \* \*

---

**4.** As discussed, *infra,* this is consistent with Prosser's admonition that "where there is a reasonably safe alternative open, the plaintiff's choice of the dangerous way is a free one, and may amount to both contributory negligence and assumption of risk." Prosser, 4th ed. § 68, at 451–52.

**5.** Contrary to the trial judge's assertion in the present case, *Rountree* did not make a landlord a guarantor of any harm to tenants. It explained that "the tenant had a right to egress from her apartment" and "a right to assume that the landlord would take all appropriate steps to make safe egress possible." *Rountree,* 52 Md.App. at 285, 447 A.2d at 904. It specifically emphasized, however, that "[w]hether the landlord did or did not is another issue and not the one upon which [the] case was decided." *Id.* Assumption of the risk is a defense to negligence. Thus, negligence must still be proven prior to recovery. *See Langley Park Apartments, Sec. H., Inc. v. Lund,* 234 Md. 402, 409–

I don't find that the mere fact that she was a tenant means that any otherwise voluntary acceptance of the risk or confrontation of the risk somehow becomes involuntary because of the tenant relationship.

There were alternatives, some of which were discussed here. And the alternative of not taking her granddaughter out for that event, and knowing that you'd have to pick her up again after the temperature had dropped under those circumstances.

The intermediate appellate court also believed that our recent snow and ice cases implicitly overruled *Rountree*, explaining:

"[I]t does not appear that the Court of Appeals would presently completely endorse our holding in *Rountree*. It no longer can be said that the assumption of the risk doctrine is inapplicable simply because the plaintiff is provided with no alternative *safe path* to reach his or her destination. Nevertheless, we *infer* from *Morgan State* that for an act to be voluntary, the plaintiff must still have some safe alternative *course of action*—such as those suggested in *Morgan State*, 397 Md. at 520, 919 A.2d 21. The safe alternative course of action, often, can simply be to refuse to take the risk.... In this case, although Thomas did not have an alternative safe path to her car, she did have a safe alternative course of action. One alternative course of action was to call the maintenance department at

10, 199 A.2d 620, 624 (1964) (noting that to hold a landlord liable for the "mere fact that snow has accumulated" without a showing of negligence would make the landlord "virtually an insurer," but holding that "an accumulation of ice or snow upon the common approaches to tenement houses or multifamily apartment buildings may result in imposing on the landlord liability for injuries due to it, provided he [or she] knew, or in the exercise of reasonable care should have known, of the existence of a dangerous condition and failed to act within a reasonable time thereafter to protect against injury by reason of it"). Conversely, if this Court were to accept, as suggested by the courts below, that *Rountree* is no longer good law, then tenants forced to confront known dangers would always be held to have assumed the risk of a landlord's negligence in failing to maintain a reasonably safe means of egress from the property. This is not the law in Maryland, as exercising the right to leave one's apartment should not relieve a landlord of his or her duty to act with reasonable care.

her apartment complex and ask them to put down salt or some other substance that would melt the ice.... Alternatively, as [the trial judge] suggested, she could have refused to take her granddaughter to the church...."

*Thomas*, 195 Md.App. at 261–62, 6 A.3d at 314.

We disagree with the intermediate appellate and trial courts' conclusion that *Rountree* is no longer good law. Insofar as it applies to a tenant's right to a reasonably safe means of ingress and egress from his or her property, *Rountree* is consistent with our case law. The factual scenarios presented in our more recent snow and ice decisions, where we concluded that assumption of the risk was established as a matter of law, each occurred outside of the landlord-tenant relationship, and involved plaintiffs who were not coerced by the defendant into encountering the risk as they were either "confronted by a choice of risks" or "driven by [their] own necessities to accept [the] danger." *ADM P'ship*, 348 Md. at 93, 702 A.2d at 735; *see Morgan State Univ. v. Walker*, 397 Md. 509, 919 A.2d 21 (2007); *Schroyer*, 323 Md. 275, 592 A.2d 1119; *Odenton Dev. v. Lamy*, 320 Md. 33, 575 A.2d 1235 (1990); *Gibson*, 245 Md. 418, 226 A.2d 273.

Our opinion in *Gibson v. Beaver*, 245 Md. 418, 226 A.2d 273, although it pre-dates *Rountree*, is consistent with the concept of voluntariness as explained in *Rountree*. In *Gibson*, the plaintiff suffered a heart attack while pulling a fuel hose approximately one hundred feet from an oil truck to his house. *Gibson*, 245 Md. at 419–21, 226 A.2d at 274–75. We rejected the plaintiff's argument that, due to his subjective belief that his actions were necessary to obtain oil, he had not encountered the risk of his injury voluntarily. *Gibson*, 245 Md. at 422–23, 226 A.2d at 276. We explained:

The plaintiff takes a risk *voluntarily* ... where the defendant has a right to face him with the dilemma of 'take it or leave it'—in other words, where [the] defendant is under no duty to make the conditions of their association any safer than they appear to be. In such a case it does not matter that [the] plaintiff is coerced to assume the risk by

some force not emanating from [the] defendant such as poverty, dearth of living quarters, or a sense of moral responsibility.

*Gibson,* 245 Md. at 422–23, 226 A.2d at 276 (quotation omitted). In *Gibson,* as in several of our post-*Rountree* snow and ice cases, discussed *infra,* the fuel supplier had a right to present the plaintiff with a "take it or leave it" situation, and the plaintiff voluntarily chose to encounter the risks associated with taking the oil out of his own necessity. *Gibson,* 245 Md. at 422–23, 226 A.2d at 276. In contrast, the landlord in *Rountree* did not have the right to deprive his tenant of a reasonably safe means of egress from her apartment. *Rountree,* 52 Md.App. at 285, 447 A.2d at 904. A landlord has an affirmative duty to provide his or her tenants with a reasonably safe means of passage to and from their homes. *Langley Park Apartments, Sec. H., Inc.,* 234 Md. at 407, 199 A.2d at 623 ("[W]here a landlord leases separate portions of his property to different tenants and reserves under his control the passageways and stairways, and other parts of the property for the common use of all the tenants he must then exercise ordinary care and diligence to maintain the retained portions in a reasonably safe condition."). Indeed, Prosser, after quoting Cardozo's maxim: "The timorous may stay at home," noted that "plaintiffs who enter business premises as invitees and discover dangerous conditions, such as slippery floors and unsafe stairways, may be found to assume the risks when they nevertheless proceed freely and voluntarily to encounter them." *Prosser and Keeton* § 68 at 486. The Restatement (Second) of Torts § 496C, comment. d, describes a situation where:

> the plaintiff enters the land or uses the chattels of the defendant, or enters into some other relation with him, without any right or privilege to do so other than that derived from the defendant's consent to the relation itself. . . . [T]he defendant is under an initial duty of reasonable care . . . but is relieved of this responsibility when the plaintiff, knowing of the danger, enters and accepts the risk.

In these cases, the plaintiffs are "driven by [their] own necessities to accept [the] danger," and therefore "the situation is not to be charged against the defendant." *ADM P'ship*, 348 Md. at 93, 702 A.2d at 735 (quoting Restatement (Second) of Torts § 496E cmt. b). Prosser also noted, however, that:

> The defendant may be under a legal duty, which he is not free to refuse to perform, to exercise reasonable care for the plaintiff's safety, so that the plaintiff has a corresponding legal right to insist on that care. In such a case it is commonly said that the plaintiff does not assume the risk when he proceeds to make use of the defendant's services or facilities, notwithstanding his knowledge of the danger.

*Prosser & Keeton* § 68, at 492 (noting that one cannot "set up assumption of risk" to defeat recovery by a plaintiff negligently barred from "premises upon which the plaintiff has a contractual right to enter," and citing, *inter alia,* cases specifically dealing with tenants' property rights).

Under the facts presented in this Court's decision in *Lamy,* the plaintiff traveled to a grocery store two days after a snow storm, knew the condition of the premises, and nonetheless chose to step over packed snow while encumbered with bags of groceries. *Lamy,* 320 Md. at 35–36, 575 A.2d at 1236. Plaintiff argued that *Rountree* applied because there were "no alternative safe routes of exit because as a business invitee she has a right of egress." *Lamy,* 320 Md. at 42, 575 A.2d at 1239. While we declined to specifically address the issue of voluntariness, we made clear that *Rountree* would not apply, because, unlike the tenant in *Rountree,* the plaintiff had a safe alternative to confronting the danger, as "she safely entered the A & P one way and exited in a different way." *Lamy,* 320 Md. at 43, 575 A.2d at 1240. Also, she testified that she considered waiting in front of the grocery store for her friend to bring the car around, so that she could load the groceries without encountering ice. Accordingly, the court held that she had "made a voluntary choice to reach her car in the manner that she did." *Lamy,* 320 Md. at 44, 575 A.2d at 1240. Further, the plaintiff's decision to travel to the grocery store

and encounter the danger was voluntary because it was based on her own necessity rather than on any compulsion emanating from the defendant. *See Prosser and Keeton* § 68, at 490–92.

*ADM P'ship* involved a plaintiff who slipped and fell on a visibly icy walkway while making a delivery at a building owned by the defendants. *ADM P'ship*, 348 Md. at 88–89, 702 A.2d at 733. While holding that the plaintiff voluntarily encountered the risk, as a matter of law, under the facts of that case, this Court in *ADM P'ship* endorsed the principle encompassed in Restatement (Second) of Torts, § 496E, which provides that:

(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk.

(2) The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to

(a) avert harm to himself or another, or

(b) exercise or protect a right or privilege of which the defendant has no right to deprive him.

*ADM P'ship*, 348 Md. at 93, 702 A.2d at 735 (quoting Restatement (Second) of Torts, § 496E). The plaintiff claimed that she knew the risk involved in traversing the icy sidewalk, but that she had no reasonable alternative and thus did not voluntarily enter into the situation, because she believed her employer would have fired her if she failed to deliver the package she was carrying. *ADM P'ship*, 348 Md. at 89–90, 702 A.2d at 733. We rejected the plaintiff's argument in *ADM P'ship*, agreeing with the trial court's determination that the plaintiff had several alternatives to encountering the hazardous situation, including refusing to deliver the package. *ADM P'ship*, 348 Md. at 99–101, 702 A.2d at 738–39. We noted that "[n]either [the plaintiff]'s employer nor the defendant ever demanded that she traverse the ice and snow covered walkway against her will," and that there was "not a shred of evidence from which Martin's concern for her job if the delivery were

not made can be inferred." *ADM P'ship*, 348 Md. at 99, 101, 702 A.2d at 738–39.

Similarly, in *Morgan State*, we held that the plaintiff who chose to visit her daughter at college after a snow storm voluntarily encountered the risk that she would slip and fall while walking across the parking lot, despite her testimony that, because her daughter needed money, she had no alternative to encountering the danger. *Morgan State*, 397 Md. at 519–20, 919 A.2d at 27–28. The plaintiff also argued that, under *Rountree*, Morgan State University owed her daughter a duty to maintain a reasonably safe mode of ingress and egress from the dormitory and that because plaintiff was visiting her daughter, she was owed the same duty. *Morgan State*, 397 Md. at 522–23, 919 A.2d at 29. We declined to apply *Rountree*, noting that, unlike *Rountree*, the case at hand did "not involve a situation where [plaintiff's] daughter (a tenant) was trapped inside her dormitory because of ice and snow, and, while trying to leave the dormitory, slipped and fell on the ice." *Morgan State*, 397 Md. at 522–23, 919 A.2d at 29–30.

Further distinguishing *Rountree*, this Court noted in *Morgan State* that "the fact that [plaintiff] wanted to bring her daughter money for gas d[id] not render her actions involuntary." *Morgan State*, 397 Md. at 520, 919 A.2d at 28. We said that "[Plaintiff] had alternatives in this case—as soon as she heard the ice underneath her tires, she could have turned her car around and gone home or arranged an alternative plan by which to get her daughter money, instead of voluntarily proceeding in the face of danger by leaving her car and traversing across ice and snow." *Morgan State*, 397 Md. at 520, 919 A.2d at 28. Indeed, the circumstances surrounding the plaintiff's injuries were more like the situation in *Gibson* as the plaintiff was properly confronted with a "take it or leave it" situation, and, thus in the language of *ADM P'ship*, was "driven by [her] own necessities to accept [the] danger." *Gibson*, 245 Md. at 422–23, 226 A.2d at 276; *ADM P'ship*, 348 Md. at 93, 702 A.2d at 735.

In *Schroyer,* the plaintiff arrived at a hotel shortly after snow had fallen. She noted that the area in front of the main entrance to the hotel had been cleared of ice and snow, but saw that the rest of the parking lot had not. Despite this knowledge, she requested a hotel room closest to an exit so that she could easily carry her paperwork from her car to her room. *Schroyer,* 323 Md. at 278–79, 592 A.2d at 1120–21. While the room was accessible from the main lobby, the plaintiff chose to move her car away from the cleared area and park on packed ice and snow for the convenience of transporting her paperwork a shorter distance. *See Schroyer,* 323 Md. at 278–79, 592 A.2d at 1120–21. Upon returning to her car from her room, she slipped and fell.

We held that the plaintiff assumed the risk of her injuries as a matter of law because it was clear "on this record, that [plaintiff] took an informed chance. Fully aware of the danger posed by an ice and snow covered parking lot and sidewalk, she voluntarily chose to park and traverse it, albeit *carefully,* for her own purposes, *i.e.,* her convenience in unloading her belongings." *Schroyer,* 323 Md. at 288, 592 A.2d at 1125. In the language of *ADM P'ship,* the plaintiff was "confronted by a choice of risks," and chose the more dangerous route. *ADM P'ship,* 348 Md. at 93, 702 A.2d at 735. This is in accord with the *Rountree* court's admonition that "[i]f there had been evidence ... that there was a reasonable and safe alternative route of egress open to the [plaintiff] and that she deliberately chose the shorter but more dangerous route, that might well establish as a matter of law that she was guilty of having assumed the risk." *Rountree,* 52 Md.App. at 286, 447 A.2d at 905.

As to the voluntariness of Petitioner's conduct, we confirm that we did not overrule *Rountree* in our prior case law and have no reason to disavow its reasoning in this case. Thus, the trial and intermediate appellate court erred in inferring from the post-*Rountree* case law that a tenant assumes the risk of injury as a matter of law despite having no reasonably *safe path* to exit the apartment, as long as there is a reasonably safe alternative *course of action.* The intermediate ap-

pellate court emphasized that a "safe alternative course of action, often, can simply be to refuse to take the risk." *Thomas*, 195 Md.App. at 261–62, 6 A.3d at 314. The trial judge stated that Petitioner could have "not tak[en] her granddaughter out" and Respondents' make much of the fact that "there were no adverse consequences if [Petitioner's] granddaughter did not attend the church meeting that evening." If this were the law in the landlord-tenant context, it would mean that a tenant, faced with a danger brought on by the landlord's negligence in failing to maintain a reasonably safe means of ingress to and egress from the leased premises, will have consented to relieve the landlord of this duty solely by exercising his or her right of access. A tenant may not be forced to surrender such a valuable legal right simply because the landlord's negligence has threatened him with harm if the right is exercised. *Rountree*, 52 Md.App. at 285–86, 447 A.2d at 904 (quoting Prosser, 4th ed. § 68, at 451). Indeed, this situation falls within the admonition stated in the Restatement (Second) and quoted approvingly by this Court in *ADM P'ship* that a "plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to ... exercise or protect a right or privilege of which the defendant has no right to deprive him." *ADM P'ship*, 348 Md. at 93, 702 A.2d at 735 (quoting Restatement (Second) of Torts § 496E); Prosser, 4th ed. § 68, at 451 ("Where the defendant puts [the plaintiff] to a choice of evils, there is a species of duress, which destroys all idea of freedom of election. Thus ... a tenant does not assume the risk of the landlord's negligence in maintaining a common passageway when it is the only exit to the street."). Therefore, in the present case, the trial court erred in holding, as a matter of law, that Petitioner's reasonable alternative to encountering the danger was to abandon her right of egress.[6]

---

6. Other jurisdictions have similarly noted the longstanding right of a tenant to safe egress from his or her apartment, and have refused to hold that a tenant assumed the risk of his or her injuries as a matter of law, merely by exercising this right. *See Robinson v. Belmont–Buckingham Holding Co.*, 94 Colo. 534, 31 P.2d 918, 920 (1934) (holding that,

Because a tenant is entitled to a reasonably safe means of ingress and egress from the property that he or she rents, *Langley Park Apartments, Sec. H. Inc.*, 234 Md. at 407, 199 A.2d at 623, it is only when the tenant has a reasonably safe *alternative path* that there exists a "choice of risks" sufficient to demonstrate a tenant's consent to relieve the landlord of this duty when the tenant chooses to traverse the more

---

even if a tenant had knowledge of the patches of ice on the common approach to her apartment that caused her slip and fall, "it did not make her a captive in her room"); *Scoggins v. Jude,* 419 A.2d 999, 1004 (D.C.1980) (holding that the defense of assumption of the risk was not available to a landlord who had allowed a dangerous condition to develop in a tenant's apartment, and stating that the tenant, who "has no reasonable alternative to remaining on the premises ... cannot be said, in fairness, to have made a voluntary decision to encounter the risk there"); *Conroy v. Briley,* 191 So.2d 601 (Fla.Dist.Ct.App. 1st Dist.1966) (holding that a tenant, without any choice as to the methods of egress, did not assume the risk of falling down the stairs when the landlord failed to install a handrail, in violation of a city ordinance); *see also Hull v. Mass. Mut. Life Ins. Co.,* 142 Ga.App. 269, 235 S.E.2d 601, 601–02 (1977) (holding that a tenant's knowledge and appreciation of the risk of walking on a patch of ice that had accumulated over her sole means of egress from her apartment was not sufficient to bar recovery as a matter of law because, "[t]o hold otherwise ... would make the [tenant] a captive in her own apartment during cold weather ... until such time as the [landlord] found it convenient to remedy the dangerous situation"); *Schwab v. Allou Corp.,* 177 Neb. 342, 128 N.W.2d 835, 841 (1964) (holding that assumption of risk was not applicable because the tenant had no choice but to exit the building over the icy porch because all exits from the building were icy. The court stated: "Assumption of risk is predicated upon an implied consent to be treated negligently. If the person against whom the doctrine is applied is deprived of a choice in the matter, the risk is not assumed, although it may be encountered."); *Oswald v. Jeraj,* 146 Ohio St. 676, 67 N.E.2d 779, 782 (1946) (declining to apply assumption of the risk to a tenant's slip on unseen ice on the common approach to her apartment, and noting that "[t]he fact that plaintiff knew of the covering of snow upon the approach did not require that she stay in her apartment"); *Mizenis v. Sands Motel, Inc.,* 50 Ohio App.2d 226, 362 N.E.2d 661 (1975) (holding that a motel guest did not assume the risk of traversing an icy stairwell, when it was the only exit from the premises); *Beck v. Dutra,* 129 Vt. 615, 618, 285 A.2d 732, 735 (1971) (plaintiff did not assume the risk of injury stemming from a lack of a handrail on the common staircase. The court stated, "even when a danger is fully known and comprehended a plaintiff is not barred from recovery simply because he chooses deliberately to encounter it where a tenant uses a common approach, hall or elevator which has remained under the control of the landlord with the duty of safe maintenance.").

dangerous route. *See Gibson,* 245 Md. at 421, 226 A.2d at 275 ("the defense of assumption of risk rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him. . . ."); *Prosser and Keeton* § 68, at 490–92. Further, the tenant's right of to ingress and egress is not contingent on the purpose of his or her trip and a landlord may not negate his or her own duty to maintain a reasonably safe means of tenant access by claiming that a tenant's egress was unnecessary, and therefore a voluntary encountering of the risk. In other words, unlike contributory negligence, the reasonableness of the plaintiff's conduct is not an element of the defense of assumption of the risk, as it does not factor into the voluntariness inquiry. *See* Fowler V. Harper, Fleming James, Jr. & Oscar S. Gray, *Harper, James, and Gray on Torts* § 21.3, at 274 (3d. ed.2007) ("The encountering of risks . . . however unnecessary—to the point, even, of foolhardiness—should ordinarily be understood as an aspect of the actor's own negligence rather than as consent . . . that another should subject the actor to negligence.").

Thus, in the present case, it was error for the trial judge to determine, as a matter of law, that Petitioner voluntarily assumed the risk of her injuries. There was evidence presented at trial about a rear exit from the central stairway which led onto an "unpaved dirt area." Petitioner's expert witness, Mr. Dinoff, opined, however, that it was "clearly not a safe alternative way of getting out of [the] building," apparently because it was not paved and not "reliably illuminated at night." Respondents did not attempt to demonstrate that the back exit was a reasonably safe alternative. The trial court granted Respondents' motion for judgment based, not on the existence of an alternative exit, but instead, upon the existence of "alternatives" including "not taking her granddaughter out for that event," and its interpretation that *Rountree* was "not the law in Maryland any longer." Thus, given the evidence that there were at least two ways out of the building, the credibility of Mr. Dinoff's testimony about the relative safety of each path was an issue to be decided by the trier of fact. *Robinson v. State,* 354 Md. 287, 313–14, 730 A.2d 181, 195

(1999) ("In a jury trial, judging the credibility of witnesses is entrusted solely to the jury, the trier of fact; only the jury determines whether to believe any witnesses, and which witnesses to believe."). On remand, it will be within the province of the jury to determine the issue of voluntariness in this case, namely whether there was more than one reasonably safe exit from Petitioner's building, and if so, whether Petitioner deliberately chose the more dangerous route.

Further, in the present case, Respondents moved for judgment at the end of Petitioner's case on the grounds of contributory negligence and assumption of the risk. While the trial judge granted the motion as to assumption of the risk, he denied it as to contributory negligence, concluding that Petitioner did not act unreasonably, as a matter of law. The judge stated: "I think that the alternatives and the reasonableness of her conduct under those circumstances is something that the jury can consider, could have considered, but for the ruling on assumption of the risk."

▬▬▬ The defense of assumption of the risk involves a "manifestation of consent to relieve the *defendant* of the obligation of reasonable conduct" towards the plaintiff. *ADM P'ship*, 348 Md. at 92, 702 A.2d at 734 (quotation omitted) (emphasis added); *accord Crews v. Hollenbach*, 358 Md. 627, 640–41, 751 A.2d 481, 488, whereas "[c]ontributory negligence is the neglect of duty imposed upon all men [and women] to observe ordinary care for their *own safety*." *Baltimore Cnty. v. State*, 232 Md. 350, 362, 193 A.2d 30, 37 (1963) (quotations omitted) (emphasis added); *Collins v. National Railroad Passenger Corp.*, 417 Md. 217, 254, 9 A.3d 56, 78 (2010) ("In working out the distinction, the courts have arrived at the conclusion that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be.") (quotations omitted). The contributory negligence of the plaintiff is identified by an objective standard as "[i]t is the doing of something that a person of

ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Baltimore Cnty.*, 232 Md. at 362, 193 A.2d at 37 (quotations omitted). This Court has noted:

> Before the doctrine of contributory negligence can be successfully invoked, it must be demonstrated that the injured party acted, or failed to act, with knowledge and appreciation, either actual or imputed, of the danger of injury which his conduct involves. Stated another way, when one who knows and appreciates, or in the exercise of ordinary care should know and appreciate, the existence of danger from which injury might reasonably be anticipated, he must exercise ordinary care to avoid such injury; when by his voluntary acts or omissions he exposes himself to danger of which he has actual or imputed knowledge, he may be guilty of contributory negligence.

*Menish v. Polinger Co.*, 277 Md. 553, 560–61, 356 A.2d 233, 237 (1976) (internal citations omitted). By way of example:

> The jaywalker who dashes into the street in the middle of the block, in the path of a stream of cars driven in excess of the speed limit, certainly does not manifest consent that they shall use no care and run him down. On the contrary, he is insisting that they shall take immediate precautions for his safety; and while this is certainly contributory negligence, it is not assumption of risk.

*Rountree*, 52 Md.App. at 284–85, 447 A.2d at 904 (quoting Prosser, 4th ed. § 68 at 450).

■■■ As noted previously by this Court, "[a]ssumption of the risk and contributory negligence are closely related and often overlapping defenses" and, the same conduct of a plaintiff can amount to both assumption of the risk and contributory negligence. *Schroyer*, 323 Md. at 280–81, 592 A.2d at 1121–22. Indeed, "[t]he overlap between assumption of the risk and contributory negligence is a complete one where the plaintiff's conduct in *voluntarily* encountering a known risk is itself unreasonable." *Schroyer*, 323 Md. 275, 281, 592 A.2d at 1122 (quotations omitted) (emphasis added); *Prosser and Keeton*

§ 68, at 491 (noting that "the danger may be out of all proportion to the value of any benefits involved, and so the plaintiff may be charged with contributory negligence for unreasonably choosing to confront the risk"); Restatement (Second) of Torts § 496A, cmt. d ("[Plaintiff's] conduct in accepting the risk may be unreasonable and thus negligent, because the danger is out of all proportion to the interest he is seeking to advance, as where he consents to ride with a drunken driver in an unlighted car on a dark night, or dashes into a burning building to save his hat.").

When the overlap occurs, a discussion of contributory negligence may necessarily include assumption of the risk and "the bar to recovery is two-pronged: 1) because the plaintiff assumed the risk of injury and 2) because the plaintiff was contributorily negligent." *Schroyer*, 323 Md. at 281, 592 A.2d at 1122. Conversely, the facts may warrant conflicting results under the theories, for example, "[a] plaintiff who proceeds reasonably, and with caution, after voluntarily accepting a risk, not unreasonable in itself, may not be guilty of contributory negligence, but may have assumed the risk." *Schroyer*, 323 Md. at 283, 592 A.2d at 1123 (citing *Pinehurst Co. v. Phelps*, 163 Md. 68, 72, 160 A. 736, 737 (1932) ("A risk, while obvious, may not be so imminently dangerous that a prudent [person] would necessarily avoid it, yet if it shall be freely encountered it will in general be held to be so far assumed that no recovery for consequent injury is possible.")); *see also* Restatement (Second) of Torts § 496A cmt. d ("Where the plaintiff voluntarily consents to take an unreasonable chance, there may obviously be both [assumption of the risk and contributory negligence].");  *Prosser and Keeton* § 68, at 495 ("Where the plaintiff acts unreasonably in making his choice, it is said that there is merely one form of contributory negligence ... [and] that there is, or should be, no distinction between the two defenses, and that there is only useless and confusing duplication.").

Although the trial judge's ruling on contributory negligence was correct, his ruling on assumption of the risk was incorrect

as the issue of Petitioner's assumption of the risk, including her knowledge of the risk of slipping on black ice, and the voluntariness of her conduct in using the front steps were questions of fact to be resolved by the jury, rather than by the trial judge as a matter of law. Therefore, on remand, the issues the jury will be required to resolve, assuming the jury finds that Respondents were negligent, are whether Petitioner was contributorily negligent and/or whether she assumed the risk of her own injuries when she tripped and fell on the black ice.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND THE CASE TO THAT COURT FOR TRIAL. RESPONDENTS TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.**